439 P.2d 507

**STATE of Arizona, Appellee,**

v.

**Jim Phillip VASSAR, Appellant.**

**No. I CA–CR 137.**

Court of Appeals of Arizona.

April 11, 1968.

Rehearing Denied May 13, 1968.

Review Denied July 2, 1968.

Darrell F. Smith, Atty. Gen., by Carl Waag, Asst. Atty. Gen., for appellee.

Murray Miller, Phoenix, for appellant.

CAMERON, Chief Judge.

This is an appeal by Jim Phillip Vassar from a jury verdict and judgment of guilt to the charge of breaking into a coin-operated contrivance (§ 13–676 A.R.S.) with a prior conviction (§ 13–1649 A.R.S.), sentence, and from the order of the court denying defendant's motion for new trial.

We are called upon to determine:

1. Did the closing argument of the County Attorney constitute reversible error?
2. Was the defendant charged under the right statute (§ 13–676 A.R.S.)?
3. Did the lifting of fingerprints by Officer Garcia from the automobile without a search warrant one day after the arrest of the defendant constitute an illegal search and seizure?
4. Was reversible error committed when police officers in their testimony referred to defendant Vassar's "arrest record" and his "mug shot"?

This is a companion case to State v. Zumwalt, 7 Ariz.App. 348, 439 P.2d 511, filed this day. Appellants Vassar and Zumwalt were co-defendants and the facts given in that case apply to this case.

## CLOSING REMARKS OF THE COUNTY ATTORNEY

We have discussed the error committed by the County Attorney in his closing remarks and whether or not they were reversible error in the case of State v. Zumwalt, supra, and we believe the law applicable to that case is applicable to the case at bar.

## DOES THE STATUTE APPLY?

We have also discussed the applicability of the statute in the case of State v. Zumwalt, supra, filed this day, and believe that the law in that case applies in the instant case.

## WAS THERE A REASONABLE SEARCH AND SEIZURE?

The defendant Vassar was linked to the crime by a fingerprint lifted from the door handle on the inside right door of the Chevrolet station wagon the day after defendants Zumwalt and Vassar had been arrested. The search of the station wagon was made by a fingerprint specialist of the Phoenix Police Department without a search warrant, and it is the contention of defendant that this is an illegal search and seizure.

With this we do not agree. The car was taken into custody and impounded when the driver of the station wagon, co-defendant Zumwalt, was stopped and placed under arrest. There is no indication that this station wagon belonged to the defendant Vassar, and we know of no law in which the defendant may object to a search and seizure of somebody else's automobile, he, the defendant, not being in possession of the automobile at the time of the search and seizure. See Bradshaw v. State, Miss. (1966), 192 So.2d 387, Osborne v. State (1966), 82 Nev. 342, 418 P.2d 812. We do

not believe that a person who does not own an automobile or have the right to its possession has a standing to object to a search or seizure of said automobile, but see Kleinbart v. State, 2 Md.App. 183, 234 A.2d 288 (1967).

## ALLEGED PREJUDICIAL REMARKS OF THE POLICE OFFICER ON THE STAND

The County Attorney in attempting to introduce fingerprint records asked the following questions:

"Q Now, these fingerprint records upon which you made a comparison, are they kept in the regular course of business?

"A Yes, they are.

"Q And what specific fingerprint records are kept by your Department in the regular course of business?

"A All fingerprints that we take incident to an arrest or any investigation by our Department.

"Q And how are these records kept, sir?

"A There are some cards that go into the master fingerprint file any extras are placed in individual jackets.

"Q And were these particular prints which are marked State's Exhibits 8 and 9, for identification kept in the regular course of business?

"A Yes, they were.

"Q Did you yourself, Officer Garcia, have occasion to verify the information contained thereon?

* * * * * *

"A Yes; I verified this against the booking which we normally—say its an arrest record; that's a technical name for the booking—"

Officer Kimmell was asked the following questions by Vassar's attorney:

"Q Were you shown pictures before coming into court today?

"A No; I had observed a picture of Mr. Vassar but not Zumwalt.

"Q When was this?

"A I saw it when I was reviewing the DR, Department Report.

* * * * * *

"Q Whose idea was it to look at a picture?

"A Look at whose picture?

"Q The picture that you mentioned a minute ago.

"A It was on my report.

'Q Would you have been able to identify the defendant Vassar if you didn't look at a picture?

"A I think I would have difficulty due to the time lapse.

"Q So that if you didn't look at a picture, probably you couldn't identify the defendant Vassar due to the time lapse; would that be fair to say?

"A I think so; yes sir.

"Q So what you are doing actually, Officer, is saying that the defendant Vassar is the same person that you have seen on the picture; he is not the same person that you had seen on December 18, 1965; isn't that so?

"A No, not exactly, because I remembered the picture that I saw yesterday resembled the man that I saw in the car on the date in question.

* * * * * *

"Q And you can tell that by looking at the picture yesterday; is that right?

"A Well, there was a year difference there, like I said, there was a time lapse, you know.

* * * * * *

"Q You don't know what we mean by positive identification?

"A Well, this is a picture and this is the man, it is sometimes difficult to— His picture was in the report; and so I naturally looked at it.

* * * * * *

"Q When you looked at that picture, Officer, were you able to make a

positive identification from that picture that the face on that picture was the same person you had seen on December 18th, 1965?

"A They looked the same to me; yes, sir. That's as near as I can come to it.

"Q So you were able to make a positive identification; is that right?

"A In my estimation, a mug photo is never positive identification."

Counsel for defendant made no motion to strike and did not ask the court to instruct the jury to disregard the statement although later he asked for a mistrial.

■ Our Supreme Court has held that a record of prior crimes is admissible in criminal prosecution for impeachment purposes only, and that the testifying officer's reference to a mug shot may prejudicially imply a previous criminal record. State v. Jacobs, 94 Ariz. 211, 382 P.2d 683 (1963). Our Supreme Court later had the following fact situation before it:

"Defendant also assigns as prejudicial error the answer of Madrid to another question which defense counsel propounded to Madrid on cross-examination, to wit:

'Q Jesse, the defendant, did he ever see you before?

'A I don't know, sir, whether he had or not, or hadn't.

'Q Had you seen the defendant before?

'A In a mug picture, sir.

'Q Only in a picture?

"A Yes.'

"No objection was made to the answer to this question, nor was a motion made to strike the unresponsive remark at the time it was made, nor was the court asked to instruct the jury to disregard it.

"However, it is contended that the reference to defendant's 'mug picture' was such a highly prejudicial remark an inference of prior criminal record of defendant that even if an objection had been made and an admonishment of the court to strike the same, its prejudicial effect could not have been cured. * * Under this record, in our opinion, neither of the answers objected to was prejudicial to defendant. Both were developed from answers to questions by defendant's own counsel. The reference to the 'mug picture' is the more serious one. The facts in the instant case are different from those in the Jacobs case, supra, in which we held the reference to 'mug picture' to be prejudicial error." State v. Ybarra, 97 Ariz. 200, 202, 203, 398 P. 2d 905, 906 (1965).

Regarding the reference to the mug photo we feel that in the instant case there being no objection, there being no motion to strike, and it appearing that the counsel for the defendant tread on such dangerously close ground for so long in his cross-examination, that the error, if any, was invited and not reversible. The reference to the arrest record had been adequately explained to the jury as being the booking in the instant case and not a record of a prior arrest which reference might be of such seriousness to constitute reversible error.

■ Counsel for the appellant raised additional matters on oral argument which were not discussed in the appellant's brief. We do not find these matters, even if successfully urged, to be fundamental error and therefore limit ourselves to the issues raised in the briefs. Webb v. Crane Co., 52 Ariz. 299, 80 P.2d 698 (1938), Mozes v. Daru, 4 Ariz.App. 385, 420 P.2d 957 (1966).

Judgment affirmed.

DONOFRIO and STEVENS, JJ., concur.