439 P.2d 511

STATE of Arizona, Appellee,

v.

Robert Louis ZUMWALT, Appellant.

No. I CA–CR 136.

Court of Appeals of Arizona.

April 11, 1968.

Rehearing Denied May 13, 1968.

Review Denied July 2, 1968.

Darrell F. Smith, Atty. Gen., by T. M. Pierce, Asst. Atty. Gen., for appellee.

Vernon B. Croaff, Public Defender, by Grant Laney, Deputy Public Defender, for appellant.

CAMERON, Chief Judge.

This is an appeal by Robert Louis Zumwalt from a judgment of guilty to the crime of breaking into a coin-operated contrivance (§ 13–676 A.R.S.) with a prior conviction (§ 13–1649 A.R.S.), a sentence in the Arizona State Prison of from 8 to 10 years, and from the denial of defendant's motion for new trial. This is a companion case to State v. Vassar, 7 Ariz.App. 344, 439 P.2d 507, filed this day. Vassar and Zumwalt were co-defendants.

We are called upon to determine:

1. Did the testimony of a police officer in which the mention of the co-defendant's "arrest record" and "mug picture" create reversible error?

2. Did the trial court commit reversible error in refusing to require or allow inspection by the jury, either on the site or in the courtroom, of closed circuit television equipment used to observe the offense in question?

3. Were the actions of the defendant covered in the section under which they were charged?

4. Was the County Attorney guilty of such misconduct in his closing argument that he unfairly prejudiced the defendant and thereby created reversible error?

The facts necessary for a determination of this matter are as follows. Mr. Irving Brayer was the owner of a coin-operated laundry located at 1738 East McDowell Road, and was also the owner of a television store located at 1908 East McDowell Road, both in the city of Phoenix, Arizona. Brayer had installed a closed-circuit television system with the monitor in his television store and the camera in the laundry. His testimony indicated that this allowed him to sit in his television store and observe the entire laundry.

On the morning of 18 December 1965 Brayer was observing the television monitor in his television store. Brayer testified that he saw two men enter the laundry, and with the aid of some keys one of the men opened up the coin box on a washing machine. The man holding the coin box then turned it upside down emptying the contents into his hand. Another person who later testified for the State entered the laundry and the two men then left.

Brayer left his television store and was able to see an automobile leaving the laundromat. Brayer followed the automobile, a "faded sort of pinkish" station wagon, in his own automobile. Brayer's automobile was equipped with a two-way radio, and he communicated with the police while following the automobile. Brayer testified the station wagon contained three men. After a considerable chase, at which time

he lost the vehicle briefly, the station wagon was stopped by the police and defendant Zumwalt, the only one in the station wagon, was arrested by an officer of the Phoenix Police Department. The officer searched the appellant and the station wagon, and change was taken from him and the glove compartment of the station wagon. The co-defendant (Vassar) was taken into custody nearby on foot. The third person was never apprehended.

Prior to the events in question Brayer had the Phoenix Police Department come to his laundry and dust the inside of the coin boxes on the washing machines and the coins therein with a powder which was invisible. According to testimony, when "aluminum hydroxide was added to the powder, it was activated and turned bright red".

After defendant Zumwalt was arrested an officer of the Phoenix Police Department applied the chemical to the appellant's hands and the coins which were found upon the appellant and in the automobile. The coins and the defendant's hands turned bright red.

The appellant was duly informed against for the crime of breaking into a coin-operated contrivance, a felony, in violation of § 13–676 A.R.S. It is from a jury verdict and judgment finding the appellant guilty of the crime charged, sentence, and from the denial of his motion for new trial that he brings this appeal.

### WAS THE OFFICER'S TESTIMONY PREJUDICIAL?

During the trial Officer Kimmell (the officer who applied the solution to the hands of the appellant Zumwalt at the scene of the arrest) was asked by co-defendant's attorney on cross-examination if he had ever observed a picture of the co-defendant Vassar. When Officer Kimmell was asked if he was able to make a positive identification (of Vassar) he answered, "In my estimation a mug photo is never positive identification". Later an identification officer of the Phoenix Police Department was asked by Vassar's attorney how he could identify the fingerprint card of the defendant Vassar and he testified as follows:

"BY MR. MILLER:

"Q  Sir, with respect to exhibit 8, were you there when that exhibit was made?

"A  No.

"Q  Then, the only knowledge that you have with reference to who this is an exhibit of, is by a name or mark on the exhibit; is that correct?

"A  Plus the comparison on the arrest record."

The term "arrest record" had previously been identified by another officer as follows:

"An arrest record; that's a technical name for the booking."

Motions for mistrial were made by both defendants as to the references to "mug photo" and "arrest record" which motions were denied.

█ It is clear that this testimony referred to the co-defendant Vassar and not to the defendant herein. Even should this be prejudicial to the co-defendant Vassar (see State v. Vassar, supra, filed this day) we do not see how it could be prejudicial to the defendant Zumwalt. We do not find that the testimony of the two officers in this regard is prejudicial.

### SHOULD THE TELEVISION EQUIPMENT HAVE BEEN VIEWED?

The second question raised by the appellant is the failure on the part of the trial court to grant his motion to produce the television equipment or in the alternative allow the jury to view its operation at the place of installation.

██ At the trial the defense counsel made a motion to require the State to furnish the television equipment or in the alternative to permit the jury to view the equipment in operation at the television store of Mr. Brayer. This motion was denied by the trial court as follows:

"THE COURT: It will be the order of the Court denying the Defendant's mo-

tion to take the jury to the scene to observe the equipment and further denying bringing the equipment into the courtroom for exhibition.

"However, in view of counsel's objection to not being able to cross-examine on the ground of lack of being able to view the equipment, to view the equipment for examination, the Court will allow the defendant to examine the equipment or for any expert witness that he may wish to bring in to examine the equipment, and after an appropriate time we will then resume."

The purpose of allowing the jurors to view evidence introduced is to enable them to comprehend more clearly that evidence. Rule 265, subd. A of the Rules of Criminal Procedure, 17 A.R.S. states:

"When in the opinion of the court it is proper that the jury should view the place where the offense appears to have been committed, or where any other material fact appears to have occurred, it may order the jury, in the custody of the proper officer, to be conducted in a body to such place. * * *."

In view of this rule it is clear that the court has the authority to grant a motion to allow the jury to view the evidence at its place of installation or to bring the same into the courtroom. However, the exercise of this authority is within the sound discretion of the trial court and should be invoked only when it is reasonably certain that it will be of substantial aid to the jury in reaching its verdict. Duke v. State of Arizona, 49 Ariz. 93, 64 P.2d 1033 (1937). It can reasonably be assumed that the members of the jury are familiar with television reception and the ability to observe objects on the screen. The owner of the equipment testified concerning the reception on the monitor. He did not claim a positive identification of the defendant Zumwalt from the TV monitor but from observing him in the car.

■ Brayer was cross-examined extensively on this point and stated:

"I would not make a guess that it would be anyone other than what I saw. I am not testifying to this jury or to the Court on the identification as to the sizes on the camera. I identified them on what I saw or when they parked their car at the service station; that was the identification of the faces; I do not mean that I am identifying the faces by the camera."

Vassar was connected to the crime by fingerprints taken from a station wagon. Although we can envision situations where a jury would be entitled to view either in court or on the scene the equipment relied upon, it does not appear that the trial court abused its discretion when it denied the defendant's motion to produce in this case. Also the trial court gave the defense ample opportunity to correct any prejudice by having an expert examine the equipment.

## WAS THE STATUTE APPLICABLE?

§ 13–676 A.R.S. provides:

"Coin-operated contrivances; penalty for breaking into

"A person who, with intent to commit grand or petty theft, enters, breaks into, or attempts to enter or break into any coin-operated vending machine or other coin-operated contrivance, apparatus or equipment used for the purpose of providing lawful amusement, *sales of goods or other valuable things*, or telecommunications, when the conduct or punishment is not otherwise provided, is guilty of a felony, except that in the case of a first offender, the court may in its discretion declare the offense to be a misdemeanor." (Emphasis ours)

The problem presented in this case is whether breaking into a coin-operated washing machine falls within the intent or purpose of the statute. More specifically, the problem is whether the phrase "sale of goods or other valuable things" was intended by the legislature to comprehend coin-operated washing machines.

In order to determine whether coin-operated washing machines fall within the

prohibition of the statute, the statute must be construed in accordance with statutory rules of construction. § 1–211 A.R.S. provides:

> "Rules of construction and definitions:
>
> "A. The rules and the definitions set forth in this chapter shall be observed in the construction of the laws of the state unless such construction would be inconsistent with the manifest intent of the legislature.
>
> "B. Statutes shall be liberally construed to effect their objects and to promote justice.
>
> "C. The rule of the common law that penal statutes shall be strictly construed has no application to these revised statutes. Penal statutes shall be construed according to the fair import of their terms, with a view to effect their object and to promote justice."

§ 1–213 A.R.S. provides:

> "Words and phrases shall be construed according to the common and approved use of the language. Technical words and phrases and those which have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning."

In State v. Allred, 102 Ariz. 102, 425 P.2d 572, at page 573 (1967) the court said:

> "Arizona Revised Statutes § 1–211 requires us to interpret statutes in the light of the legislative intent. This section further states that statutes ought to be liberally construed in order to 'effect their objects and promote justice.' All other rules of statutory construction are secondary and are to be used only to aid in the proper application of the two rules of construction set forth above."

▆▆▆ Determination of the intent of the legislature is the primary consideration and takes precedence over other rules of statutory construction. Selective Life Insurance Company v. Equitable Life Assurance Society, 101 Ariz. 594, 422 P.2d 710 (1967). If the meaning of the language used in an act is doubtful, it should be given a construction, if possible, that will reconcile it with the general purposes of the act. State Tax Commission v. Shattuck, 44 Ariz. 379, 38 P.2d 631 (1934). Consideration must be given to both the evil to be remedied and the result which the legislature desired to reach. City of Phoenix v. Drinkwater, 46 Ariz. 470, 52 P.2d 1175 (1935). The Court may determine the legislative intent from necessary implication as to what was intended. Coggins v. Ely, 23 Ariz. 155, 202 P. 391 (1921). Statutes must be interpreted in such a manner as to apply to the myriad of situations which will be presented thereunder.

Other courts have held that telephone service is a "valuable thing", Stokes v. State, 366 P.2d 425, Okl.Cr. (1961); and free replay privileges on a pinball machine, State v. Betti, 21 N.J.Misc. 345, 34 A.2d 91 (1943); and a month's lodging under the statute against obtaining any valuable thing by impersonating a United States officer, United States v. Ballard, 8 Cir., 118 F. 757 (1902).

▆▆▆ We feel that the term "other valuable things" is certainly broad enough to cover the services rendered by a coin-operated washing machine, and that our legislature intended to cover breaking into coin-operated laundry machines by use of the phrase "other valuable things".

We therefore hold that § 13–676 A.R.S. covers the offense with which the defendant was charged and that he was properly prosecuted under this statute.

## COUNTY ATTORNEY'S ALLEGED MISCONDUCT

Defendant next objects to the misconduct of the County Attorney in his closing argument as follows:

> "Your Honor, ladies and gentlemen: There is only one thing that I don't disagree with Mr. Miller on and that is the faith that I have in you good people as ladies and gentlemen of the jury, to see that justice is done. That is my one visible duty; I am an officer of this

Court, and he is not an officer of this Court. It is by absolute duty to divulge only the truth and to not, as Mr. Miller would have you insinuate, keep out things that I do not feel that you, as ladies and gentlemen of the jury, should not hear. That is in way of evidence and exhibits.

"I believe, as he does, that this is a serious matter we are dealing with. Mr. Miller is not an officer of this Court. His duty isn't to the people; it is one thing and one thing only, this man, and Mr. Hyder, to have you find their clients, the defendants, not guilty; not one other thing. His only moral obligation is to these two individuals and nobody else. Once he has done that, he has done the same thing that any defense counsel will do, and that is to find his clients, for you the jury, to find his clients not guilty."

At the close of the County Attorney's argument the defendant moved as follows and the court ruled:

"MR. MILLER: If the Court please, I would like the record to show an objection by both Mr. Hyder and myself with respect to Mr. Florence's opening remark when he stated that he was an officer of the Court and neither Mr. Hyder nor myself were; and Mr. Hyder and myself are officers of this Court.

"THE COURT: The jury will be instructed to disregard that statement of Mr. Florence concerning counsel being officers of the Court."

In addition to the instruction to the jury to disregard the statement, the court in the instructions to the jury stated:

"Arguments and comments of counsel are intended to help you in understanding the evidence and in applying the law. Arguments and comments of counsel, however, are not evidence. If any comment of counsel has no basis in the evidence, you are to disregard that comment."

The State contends that these statements were made in response to insinuations made by the defense counsel. We do not feel that these remarks by the County Attorney in his closing argument were proper. Both the County Attorney and defense counsel were and are officers of the court as are all attorneys admitted to practice, State ex rel. Andrews v. Superior Court, 39 Ariz. 242, 5 P.2d 192 (1931), In re Greer, 52 Ariz. 385, 81 P.2d 96 (1938), In re Wren, 79 Ariz. 187, 285 P.2d 761 (1955), and to infer otherwise is clearly erroneous. We do not believe in this case, however, that it was prejudicial.

Our Court has stated that prejudicial error will not be presumed. State v. Taylor, 2 Ariz.App. 314, 408 P.2d 418 (1965), State v. Martin, 2 Ariz.App. 510, 410 P.2d 132 (1966). And our Supreme Court has stated:

"* * * for this court to reverse a case, the error must be prejudicial under the facts of the case under consideration. This court has held the test to be: had the error not been committed was there reasonable probability that the verdict might have been different." State v. Ybarra, 97 Ariz. 200, 202, 398 P.2d 905, 907 (1965).

Admitting the error in the Deputy County Attorney's statement we do not feel that had it not been made the result would have been different:

"Although we do not approve the statement made by the deputy county attorney, on the basis of the record and the instruction of the court to the jury, we hold the statement of the deputy county attorney was not prejudicial error." State v. Gortarez, 98 Ariz. 160, 169, 402 P.2d 992, 998 (1965).

Judgment affirmed.

DONOFRIO and STEVENS, JJ., concur.