637 P.2d 1073

**The STATE of Arizona, Appellee,**

*v.*

**Arthur PLATT, Appellant.**

**No. 2 CA–CR 2264.**

Court of Appeals of Arizona, Division 2.

Sept. 18, 1981.

Rehearing Denied Nov. 5, 1981.

Review Denied Dec. 1, 1981.

As Corrected Feb. 5, 1980.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Greg A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

William B. Blaser, Tucson, for appellant.

HOWARD, Judge.

Appellant was convicted by a jury of nine offenses involving three separate incidents. Counts I through IV, first-degree burglary, armed robbery, theft and kidnapping, occurred on March 30, 1980; Counts V through VIII, first-degree burglary, armed robbery, kidnapping and theft, occurred on May 1, 1980. Count IX, unlawful possession of a narcotic drug, occurred on May 2, 1980. Allegations of the dangerous nature of the burglary, kidnapping and armed robbery offenses were found by the jury to be true. The state also alleged Count II (armed robbery—March 30, 1980) as a prior offense in relation to Count VI (armed robbery—May 1, 1980).

On Counts I through IV the trial court gave concurrent sentences of imprisonment, the longest sentence being 10½ years and the shortest five years. On Counts V through VIII the trial court sentenced appellant to concurrent prison terms, the shortest being five years and the longest 15.75 years. Appellant was sentenced to four years' imprisonment on Count IX. The trial court then ordered Counts V through VIII to be served consecutively to the longest term in Counts I through IV and Count IX to be served consecutively to the longest sentence on Counts V through VIII.

The main two incidents, Counts I through VIII, involved the same victim. On March 30, appellant broke into the victim's house while she was present, threatened to shoot her, stole her television set, jewelry case, purse and 1976 Chrysler Cordoba. During this incident, the victim said appellant had a "silvery" object in his hand which she described as being shaped like a gun. On May 1, 1980, appellant again broke into the victim's house while she was present, threatened to shoot her, took her purse and her newly purchased 1980 Chrysler Cordoba after he demanded that she give him the keys.

The day before the second incident, the police found the victim's 1976 Chrysler. Appellant's fingerprints were inside the car as was a receipt for photographs left to be developed at a Foto Stop. The police secured a search warrant for the photographs which they then picked up. After recognizing appellant in several of the photographs, they went to his old address but found that he had moved. One of the pictures showed a panoramic view of Tucson. By driving around and lining up the landmarks reflected in the photograph, they sought to find the location which would duplicate the view. They finally arrived at 2141 West Tanglewood. After receiving permission from a boy to enter the backyard of his home, which was next door, they determined that the photographs were taken in the backyard of the 2141 residence.

The officers got a search warrant, entered and discovered that appellant, although not then present, lived there with his girlfriend. They searched the premises and found the victim's 1980 Chrysler in the garage with her purse inside the car. In a closet they found a cardboard box which contained her purse from the first robbery and the jewelry box. A loaded, chrome-plated revolver was found with the clothes that appellant wore when he committed the crimes.

Appellant was subsequently arrested and taken to the police station. He was given his Miranda rights and told the officers that he did not wish to speak to them and wanted an attorney. Appellant, thereafter, spontaneously engaged in a conversation with the officers, where he stated that they "got him" and he would probably "do" fifty years. He also asked the officers how they found out that he had committed the crime and the officers described how they had done so.

Prior to trial, the court appointed two psychiatrists to examine appellant and de-

termine his competence to stand trial. At the competency hearing Dr. John LaWall, one of the examining psychiatrists, testified that during the interview, appellant said that since the doctor was not his attorney, he didn't think it was a good idea to say anything about the allegations against him. He also told Dr. LaWall that he had experienced a recent religious conversion. It was Dr. LaWall's opinion that appellant was intentionally vague and evasive and that he was competent to stand trial.

Dr. Gurland, who was also appointed to examine appellant, believed there were some definite questions as to appellant's competency to stand trial because of what appeared to him to be appellant's vagueness and preoccupation with religion. However, under cross-examination by the prosecution, Dr. Gurland admitted that appellant probably could meet the Rule 11 standards and go to trial.

Prior to trial, appellant's counsel moved to withdraw on the grounds that appellant refused to speak to him about the case. When questioned by the court, however, appellant stated he did not want a new attorney and the trial court refused to allow appellant's counsel to withdraw.

■ Appellant contends that when the officers entered his neighbor's backyard, in order to line up the landmarks on the photograph, they conducted an illegal search because (1) he had a reasonable expectation of privacy in his rear yard and (2) because the boy was incapable of giving consent to the officers' entry of his backyard. Assuming arguendo that the act of lining up the objects in the photograph with the objects on the ground constituted a "search", this argument is without merit. Appellant cannot object to any claimed illegal entry of his neighbor's yard. His rights were not infringed since he did not own his neighbor's house and had no possessory interest in it. See *State v. Vassar*, 7 Ariz.App. 344, 439 P.2d 507 (1968); *State v. Hill*, 10 Ariz.App. 599, 461 P.2d 168 (1969) and see also *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

■ Equally devoid of merit is appellant's "reasonable expectation of privacy" argument. Appellant's backyard was open to physical access and viewing from his neighbor's backyard. There is no reasonable expectation of privacy under such circumstances. Cf., *State v. Cobb*, 115 Ariz. 484, 566 P.2d 285 (1977).

■ Appellant further contends that the motion to suppress evidence found in the cardboard box in the closet in appellant's house should have been granted because of the officers' illegal act of adding items to the search warrant after the warrant was issued and approved by the magistrate. This argument is also without merit. Appellant has mistaken the return of the search warrant as an alteration of the search warrant authorized by the magistrate. The evidence in the box was discovered during a lawful search for the objects described in the warrant. Under such circumstances the discovered goods may be seized. *State v. McMann*, 3 Ariz.App. 111, 412 P.2d 286 (1966). And see *State v. Reynolds*, 11 Ariz.App. 532, 466 P.2d 405 (1970). Assuming arguendo that the items were wrongfully seized, their introduction into evidence was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Appellant next contends his right to due process under the Fourteenth Amendment to the United States Constitution was violated when the trial judge instructed the jury as follows:

"Exhibition in the course of committing armed robbery of an article fashioned or used in a manner to lead any reasonable person to believe it to be deadly or dangerous *is presumed evidence* of its deadly or dangerous character." (Emphasis added)

Appellant claims this instruction negates the presumption of innocence and allows the state to prove a crime by a presumption and not by presenting evidence to prove each element of a crime beyond a reasonable doubt.

Resolution of this issue first requires a look at the statutory basis of the instruc-

tion. After determining the constitutionality of the statute, we must then analyze the instruction and its possible interpretation by the jury.

■ By statute, a person commits armed robbery if, inter alia, in the course of committing robbery he is armed with a deadly weapon or uses or threatens to use a deadly weapon. A.R.S. § 13–1904(A)(1) and (2). A "deadly weapon" means anything designed for lethal use and includes a firearm, A.R.S. § 13–105(9), whether it is loaded or unloaded. A.R.S. § 13–105(12). The state must prove that the weapon is, in fact, a deadly weapon. For example, if the instrument used is a toy cap pistol, the state has not sustained its burden of proof. See *State v. Moore*, 126 Ariz. 251, 614 P.2d 332 (1980). The last applicable statute is A.R.S. § 13–1904(B) from which the court took its instruction:

> "For purposes of this chapter, exhibition in the course of committing armed robbery of an article fashioned or used in a manner to lead any reasonable person to believe it to be deadly or dangerous *is presumed evidence* of its deadly or dangerous character." (Emphasis added)

■ To determine the constitutionality of any given presumption, we must first determine whether the presumption is permissive or mandatory. *County Court of Ulster County v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). A permissive presumption allows, but does not require the jury to infer the presumed fact upon proof by the prosecution of the "evidentiary" or predicate fact. The use of a permissive presumption is constitutional if there is a rational connection between the predicate and presumed facts. *County Court of Ulster County v. Allen*, supra. See also *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). As far as the presumption in A.R.S. § 13–1904(B) is concerned, we have no difficulty in finding a

rational connection between the proven fact of the exhibition of an article fashioned or used in a manner to lead a reasonable person to believe it to be deadly or dangerous and the inference that the article is deadly or dangerous in character.

■ For constitutional purposes, it is also important to differentiate between a mandatory and permissive presumption. This is well set forth in the case of *McInerney v. Berman*, 621 F.2d 20 (1st Cir. 1980):

> "A mandatory presumption is of either the conclusive or burden-shifting variety. An instruction from the judge that proof of one fact is irrebuttable proof of a presumed fact is conclusive. A presumption that shifts the burden of proof to the defendant can be recognized by language that instructs the jury that proof of the predicate implies proof of the presumed fact unless disproved by the defendant himself by a preponderance of the evidence. *Sandstrom v. Montana*, supra, 442 U.S. at 516, 99 S.Ct. at 2455. A mandatory presumption which shifts the burden of persuasion by requiring the defendant to establish affirmatively the negative of an element of the offense is unconstitutional. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). However, a permissive presumption which allows but does not require the jury to find that the prosecution has met its burden as to the inferred fact on proof of the predicate fact at the most shifts the burden of production to the defendant which is not per se a violation of due process. Id. at 702–3 n.31, 95 S.Ct. at 1891 n.31. The presumption must then meet the rational-connection test in order to survive constitutional scrutiny. See *Barnes v. United States*, [citation omitted]."

We conclude that A.R.S. § 13–1904(B) does not create a mandatory presumption under these standards. Instead, it gives rise to a permissive inference which does not unconstitutionally shift the burden of proof.[1]

---

1. See for example, *People v. Lemmons*, 40 N.Y.2d 505, 387 N.Y.S.2d 97, 354 N.E.2d 836 (1976) where the New York court held that

New York Penal Law, § 265.15(3) making the presence in an automobile of any firearm "presumptive evidence" of its possession by all per-

■ After finding the statutory presumption constitutional, we must still go one step further. In *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) the Supreme Court announced the following standard in testing the propriety of a jury charge: "... [W]hether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." 442 U.S. at 514, 99 S.Ct. at 2454. It is therefore necessary for us to determine from all the instructions whether this permissive inference could reasonably have been interpreted by the jury as shifting the burden of proof to the defendant to prove that he did not have a deadly weapon at the time of the robbery. Since the challenged instruction must be read in context with the entire charge to the jury, *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1963), we include portions of the relevant instructions which the petitioner does not challenge:

> "You must consider the instructions as a whole, and you are not to pick out one instruction, or part of one, and disregard the others....
> The law does not require a defendant to prove his innocence. He is presumed by law to be innocent. This means the State must prove all of its case against the defendant.
> The State must prove the defendant guilty beyond a reasonable doubt.
> The crime of armed robbery requires proof ... [that] the defendant was armed with a deadly weapon or dangerous instrument during the commission of the robbery....
> You are instructed that the term 'armed with a gun or deadly weapon' means 'furnished or equipped with a weapon of offense or defense,' and applies to any situation where a gun or deadly weapon is within the immediate control of the criminal offender and is available for use in the crime."

■ Viewing the instructions as a whole, we are convinced that a reasonable juror could have interpreted the instruction as requiring the defendant to prove that the weapon was not deadly. The court told the jury that the use of the article "is presumed evidence". The instruction did not use permissive language such as "you may make an inference". Furthermore, we do not believe that the other instructions which we have recited do anything to clarify or qualify how the inference was to be used.

Even though the instruction was given in relation to the crime of armed robbery, we believe that it carried over and tainted the court's instructions on the definition of a dangerous or deadly weapon given in connection with the allegations of dangerousness.

■ Appellant next contends the trial court erred by not finding that he was incompetent under Rule 11, Arizona Rules of Criminal Procedure, 17 A.R.S. We do not agree. The evidence of Dr. LaWall amply supports the trial court's ruling. Furthermore, the testimony of the other psychiatrist was equivocal at best. Nor do we believe that appellant can prevent his trial by simply refusing to speak to his lawyer.

Appellant also contends that the trial court's use of the March 30 conviction for armed robbery to enhance the May 1 conviction for armed robbery is impermissible. This contention is without merit. See *State v. Hannah*, 126 Ariz. 575, 617 P.2d 527 (1980).

■ Lastly, appellant contends that the trial court erred in not suppressing the statements he made to the police. As the facts indicate, his conversation with the police was spontaneous and did not involve any police interrogation. In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Court stated:

sons occupying the automobile at the time such weapon was found was not a mandatory presumption.

"... We further hold that an accused such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police."

It is clear that appellant's statements are admissible under this standard.

The state points out in its answering brief that the trial judge did not state his reasons for imposing consecutive sentences. This is required by A.R.S. § 13–708.

Appellant's convictions on Count III, theft; Count IV, kidnapping; Count VII, kidnapping; Count VIII, theft; and Count IX, unlawful possession of a narcotic drug are affirmed. Appellant's sentences on Count III, theft; Count VIII, theft; and Count IX, unlawful possession of a narcotic drug are affirmed except that part of the sentences which require that they be served consecutively is vacated. The findings of the jury as to the dangerousness of the offenses in Counts I, III, IV, V, and VII, are vacated and set aside. Appellant's convictions on Count I, first degree burglary (aimed with a deadly weapon); Count II, armed robbery and Count VI, armed robbery; and Count V, first degree burglary (aimed with a deadly weapon) are reversed.

The case is remanded to the superior court for further proceedings consistent with this provision and in compliance with A.R.S. § 13–708.

HATHAWAY, C. J. and MICHAEL J. BROWN, Superior Court Judge, concur.

NOTE: Judge BEN C. BIRDSALL having recused himself in this matter, Judge MICHAEL J. BROWN was called to sit in his stead and participate in the determination of this decision.