IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2010-0077 |
| | ) | DEPARTMENT B |
| Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| ABDULKADIR ABDI, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20091084

Honorable Richard D. Nichols, Judge

REVERSED AND REMANDED

Thomas C. Horne, Arizona Attorney General
  By Kent E. Cattani and Amy M. Thorson                                 Tucson
                                                  Attorneys for Appellee

Robert J. Hirsh, Pima County Public Defender
  By Lisa M. Hise                                                        Tucson
                                                  Attorneys for Appellant

K E L L Y, Judge.

**¶1**         In this appeal from his aggravated assault conviction, appellant Abdulkadir Abdi argues the trial court erred in giving two jury instructions requested by the state and in making several evidentiary rulings. Because we conclude the court erred in instructing

the jury, pursuant to A.R.S. § 13-419, to presume the victim had acted reasonably in defense of his residence, we reverse.

## Background

**¶2**        "We view the facts and all reasonable inferences therefrom in the light most favorable to upholding the verdict[]." *State v. Tamplin*, 195 Ariz. 246, ¶ 2, 986 P.2d 914, 914 (App. 1999). Abdi met the victim, L., through a mutual acquaintance. At the time, L. lived in a one-bedroom apartment with his girlfriend K. and their young child. Abdi and his girlfriend Callista were looking for a place to stay and L. offered to let them share the apartment temporarily. After approximately four weeks, L. and K. felt the arrangement was not working and K. delivered a letter to Callista asking that she and Abdi move out.

**¶3**        Sometime after moving out, Abdi returned to the apartment and, according to L.'s testimony, banged on the door and threatened to shoot him. L. kept the door locked and Abdi eventually left. A few days later, shortly after midnight, Abdi again visited the apartment. L. testified that when he saw Abdi approaching he tried to close and lock the door, but Abdi forced it open and attempted to enter the apartment. L. further testified he had tried to "push [Abdi] outside" and had stated "you can't come in here." During the struggle Abdi pulled a knife from his pocket and stabbed L. multiple times. Abdi fled and K. called the police. L. was transported to the hospital and treated for his injuries.

2

**¶4**      Abdi was arrested and charged with aggravated assault. A jury found him guilty of the offense and the trial court sentenced him to 9.5 years' imprisonment. This appeal followed.

### Discussion

### I. Presumption of Reasonableness Instruction

**¶5**      Abdi contends the trial court erred in instructing the jury on a person's defense of his or her residence because it lessened the state's burden of proof. Although we review for an abuse of discretion whether the trial court erred in giving or refusing to give requested jury instructions, *see State v. Anderson*, 210 Ariz. 327, ¶ 60, 111 P.3d 369, 385 (2005), we review de novo whether the instruction it gave correctly states the law, *see State v. Orendain*, 188 Ariz. 54, 56, 932 P.2d 1325, 1327 (1997). Jury instructions are viewed as a whole to determine if they "adequately reflect the law." *State v. Gallegos*, 178 Ariz. 1, 10, 870 P.2d 1097, 1106 (1994).

**¶6**      At trial, Abdi claimed he had acted in self-defense and that L. had been the initial aggressor.[1] The trial court instructed the jury on self-defense. In addition, at the state's request, the court instructed the jury that, "[t]he person is presumed to have acted reasonably if the person acted against another person who unlawfully or forcefully entered the person's residential structure." On appeal, Abdi argues that this instruction, as applied to the victim, "creat[ed] a mandatory presumption that [L.] . . . act[ed]

---

[1] Specifically, Abdi testified that upon his arrival at the apartment L. "hit [him] with a baseball bat." L. testified he had a bat in the apartment but denied using it against Abdi.

3

reasonably." Abdi contends this presumption "lessened the [s]tate's burden of proving . . . that [Abdi] was not acting in self[-]defense."

¶7 As Abdi points out, the instruction tracks the language of A.R.S. § 13-419. That statute provides a presumption that a person acted reasonably for purposes of a justification defense under A.R.S. §§ 13-404 through 13-408 and 13-418 when acting against someone entering their home unlawfully or forcibly. We must therefore determine whether it was error for the trial court to give such an instruction with respect to a victim's actions rather than to the actions of a defendant raising a justification defense. In statutory interpretation, our goal is to give effect to the legislature's intent. *State v. Peek*, 219 Ariz. 182, ¶ 11, 195 P.3d 641, 643 (2008). "In any case involving statutory interpretation we begin with the text of the statute" because it is "the best and most reliable index of a statute's meaning." *State v. Christian*, 205 Ariz. 64, ¶ 6, 66 P.3d 1241, 1243 (2003). "When the plain text of a statute is clear and unambiguous there is no need to resort to other methods of statutory interpretation to determine the legislature's intent because its intent is readily discernable from the face of the statute." *Id.* But, if the statute's language is not clear, we examine "'the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose.'" *See Greenwood v. State*, 217 Ariz. 438, ¶ 16, 175 P.3d 687, 691 (App. 2008), *quoting In re Estate of Jung*, 210 Ariz. 202, ¶ 12, 109 P.3d 97, 99 (App. 2005).

¶8 Section 13-419 uses the general phrase, "[t]he person," suggesting the statute could apply to either a defendant or an alleged victim in a case. But, the historical

4

background of the statute and the language used in describing the legislature's intent at the time of the statute's passage suggest the presumption was meant to apply in favor of a defendant in a criminal action who raises a justification defense. The Arizona Senate Fact Sheet for S.B. 1145, ultimately enacted as § 13-419, describes the background and purpose of the statute. Arizona State Senate, Fact Sheet for S.B. 1145, 47th Leg., 2d Reg. Sess. (March 8, 2006). The Fact Sheet uses the term "defendant" throughout and explains, "[u]se of force justification laws . . . must be raised by a defendant who is charged with using force." It further provides that the proposed statute "[r]equires, if the defendant presents a justification defense, the state must prove beyond a reasonable doubt that the defendant did not act with justification." Senate Fact Sheet for S.B. 1145. Accordingly, we conclude the legislature intended § 13-419 to apply to a defendant who is charged with using force in response to someone unlawfully entering their home.

¶9 We next turn to Abdi's contention that the jury instruction, modeled on the statute, but given in an unintended context, created an unconstitutional presumption that lessened the state's burden of proof. In assessing the constitutionality of jury instructions dealing with presumptions, "we must first determine if the presumption is mandatory or permissive." *State v. Lopez*, 134 Ariz. 469, 472, 657 P.2d 882, 885 (App. 1982). "In determining the nature of the presumption, the instruction must be interpreted as a reasonable juror could have interpreted it." *State v. Grilz*, 136 Ariz. 450, 457, 666 P.2d 1059, 1066 (1983).

5

¶10    "A 'permissive presumption' . . . allows the trier of fact to infer the presumed fact from proof of the basic facts, but places no burden of any kind on the defendant." *Id.* A mandatory presumption instructs the jury that it "'must find the [ultimate] fact upon proof of the basic fact.'" *State v. Mohr*, 150 Ariz. 564, 567, 724 P.2d 1233, 1236 (App. 1986), *quoting County Court of Ulster County v. Allen*, 442 U.S. 140, 157 (1979) (alteration in *Mohr*).

¶11    We agree with Abdi that the language of the challenged instruction here is mandatory, not permissive. The trial court essentially instructed the jury that, upon the requisite factual showing of an unlawful entry into a home, they were to presume the victim had "acted reasonably" in defense of that home. Because the instruction contained no permissive language and permitted "no room for the jury to exercise its discretion," a reasonable juror could have viewed the instruction as requiring that he or she find the ultimate fact—that the victim acted reasonably in defense of his residence—upon the state's proof of the basic fact—that Abdi "unlawfully or forcefully" entered the residence. *See id.* Accordingly, we conclude the instruction created a mandatory presumption. *Cf. Sandstrom v. Montana*, 442 U.S. 510, 515 (1979) (finding instruction "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts[,]" created a mandatory presumption).

¶12    Because L. was the only person in a position to defend his residence, a reasonable jury could only have understood the presumption to apply in favor of L., rather than Abdi. And the instruction, when applied to the victim in this case, is

6

problematic. Once the state proved that L. had "acted against another person who unlawfully or forcefully entered [L.]'s residential structure[,]" the jury was to presume that Abdi's use of force was in response to reasonable action by the victim. Abdi's claim of self-defense was thus unjustified unless he presented evidence to rebut the presumption.

**¶13**       "Justification is not an affirmative defense that the defendant must prove." *State v. King*, 225 Ariz. 87, ¶ 6, 235 P.3d 240, 242 (2010). Rather, if the defendant presents any evidence of self-defense, the state must establish "'beyond a reasonable doubt that the defendant did not act with justification.'" *Id*., *quoting* A.R.S. § 13-205(A).[2] Thus, when applied to the victim in this case, a reasonable jury could have understood the instruction to create a presumption that relieved the state of its burden of persuasion as to an element of the offense. *See Francis v. Franklin*, 471 U.S. 307, 314 (1985).

**¶14**       We next consider the instruction in the context of the jury instructions as a whole, as "[o]ther instructions might explain the infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption." *Id*. at 315. The jury instructions provided:

> If evidence was presented that raises the defense of self-defense for aggravated assault then the State has the burden of proving beyond a reasonable doubt that the

---

[2]Arizona's affirmative defense statute, A.R.S. § 13-205, was amended in 2006 by the Legislature to require the state to "prove beyond a reasonable doubt that the defendant did not act with justification" if the defendant presents evidence of self-defense. *See* 2006 Ariz. Sess. Laws, ch. 199, § 2.

7

defendant did not act with such justification. If the State fails to carry this burden, then you must find the[]defendant not guilty of the charge.

Following closing argument, the court also instructed the jury:

The law does not require a defendant to prove his innocence or to present any evidence. A defendant is presumed by law to be innocent.

The State must prove each element of the charge beyond a reasonable doubt.

The burden of proving the defendant guilty beyond a reasonable doubt rests upon the State and never shifts throughout the trial. If the State does not meet this burden of proof, you must find the defendant not guilty.

¶15 The state argues that when read as a whole, the instructions did not shift the burden of proof to Abdi. We disagree. While the other instructions clarified that the burden of disproving self-defense is on the state, they did not explain or correct the conflicting instruction to presume the victim had acted reasonably. "The purpose of jury instructions is to inform the jury of the applicable law . . . ." *State v. Noriega*, 187 Ariz. 282, 284, 928 P.2d 706, 708 (App. 1996). While the "instructions need not be faultless . . . they must not mislead the jury in any way and must . . . [provide] an understanding of the issues. *Id*. Even when viewed in the context of all the instructions given, a reasonable juror could have interpreted the challenged instruction to create a presumption that lessened the state's burden of proof and required rebuttal evidence from the defendant to overcome.

8

¶16　　　　"'A mandatory presumption which shifts the burden of persuasion by requiring the defendant to establish affirmatively the negative of an element of the offense is unconstitutional.'" *State v. Platt*, 130 Ariz. 570, 574, 637 P.2d 1073, 1077 (App. 1981), *quoting McInerney v. Berman*, 621 F.2d 20, 23 (1st Cir. 1980). Accordingly, it was error for the trial court to give the instruction, and the error was not cured by the weight of the other instructions.

¶17　　　　Having found error, we must determine whether reversal is required. The United States Supreme Court "has not resolved whether an erroneous charge that shifts a burden of persuasion to the defendant on an essential element of an offense can ever be harmless." *Francis*, 471 U.S. at 325. Here, the core of Abdi's defense was justification. An instruction that the jury was to presume the victim acted reasonably went to the heart of his case. Moreover, because the issue of the victim's reasonableness was not overwhelmingly proven by the evidence, we cannot say the error was harmless. *See State v. Dann*, 205 Ariz. 557, ¶ 18, 74 P.3d 231, 239 (2003) ("Erroneous jury instructions are subject to a harmless error analysis."); *Mohr*, 150 Ariz. at 569, 724 P.2d at 1238 (applying harmless error standard to instruction that created mandatory presumption). We therefore vacate Abdi's conviction on this ground.[3]

---

[3]Abdi also argues § 13-419 is unconstitutional on its face. Because we decide the issue on other grounds, we decline to address this issue. *See Goodman v. Samaritan Health Sys.*, 195 Ariz. 502, ¶ 11, 990 P.2d 1061, 1064 (App. 1999) ("It is sound judicial policy to avoid deciding a case on constitutional grounds if there are nonconstitutional grounds dispositive of the case."); *see also R.L. Augustine Constr. Co. v. Peoria Unified Sch. Dist. No. 11*, 188 Ariz. 368, 370, 936 P.2d 554, 556 (1997) ("We will not reach a constitutional question if a case can be fairly decided on nonconstitutional grounds.").

## II. Instruction on Requirement to Produce Evidence

**¶18** Although we need not address Abdi's remaining arguments in light of our decision to reverse his conviction, we do so because the issues are likely to arise on remand. *Dawson v. Withycombe*, 216 Ariz. 84, ¶ 98, 163 P.3d 1034, 1063 (App. 2007).

**¶19** Abdi takes issue with the instruction, "[n]either side is required to call as witnesses all persons who may have been present at the time of the events disclosed by the evidence or who may appear to have some knowledge of these events or to produce all objects or documents mentioned or suggested by the evidence." Abdi appears to argue, as he did below, that this instruction gave the impression the state need not prove each and every element of the offense.[4]

**¶20** Viewing the challenged instruction in the context of the jury instructions as a whole, we find no error. *See Gallegos*, 178 Ariz. at 10, 870 P.2d at 1106. The state notes we previously addressed a similar instruction in *State v. Herrera*, 203 Ariz. 131, 51 P.3d 353 (App. 2002). As in *Herrera*, we conclude that when read in the context of the entire jury instructions, a reasonable juror would have "understood the instruction[] to mean that, although the state need not produce every scrap of evidence available, it must produce sufficient evidence to prove the defendant guilty beyond a reasonable doubt." *Id*. ¶ 24. We find no error here.

---

[4]Abdi contends that this instruction, "when read in conjunction" with the previous instruction, compounds "the problem of the mandatory presumption." Having found it was error to give the first instruction, this is another argument we need not address.

### III. Evidentiary Rulings

¶21 Abdi next alleges "[t]he trial court erred in precluding [him] from presenting evidence of [L.]'s immigration status." We review a trial court's evidentiary rulings for a clear abuse of discretion. *State v. Amaya-Ruiz*, 166 Ariz. 152, 167, 800 P.2d 1260, 1275 (1990). A ruling constitutes an abuse of discretion when "the reasons given by the court . . . are clearly untenable, legally incorrect, or amount to a denial of justice." *State v. Chapple*, 135 Ariz. 281, 297 n.18, 660 P.2d 1208, 1224 n.18 (1983).

¶22 On cross-examination at trial, defense counsel questioned L. about his immigration status. The court sustained the state's objection to the question on the basis of relevance. Abdi argues on appeal, as he did below, that the information was relevant to show that L. had a motive to accuse him of the crime because "[L.]'s immigration status would be in jeopardy if [L.] was the aggressor." "We evaluate cross-examination restrictions on a case-by-case basis to determine whether the defendant was denied the opportunity to present evidence relevant to issues in the case or the witness' credibility." *State v. Cañez*, 202 Ariz. 133, ¶ 62, 42 P.3d 564, 584 (2002).

¶23 L. testified he was originally from Sierra Leone, West Africa and had moved to this country in September of 2005. L. was then questioned as to cultural differences between the two locations. During a discussion at the bench, defense counsel asserted that if L. "[wa]s the aggressor in this case . . . his immigration status is in jeopardy." But we find nothing nor has Abdi directed us to anything, in the record about the process by which L. immigrated or any evidence to suggest his current status was in

11

jeopardy. Because the jury had heard only limited testimony that L. had moved here from West Africa, the court properly could have concluded that the testimony was collateral to the issues at trial and would potentially confuse the jury. *See State v. Zuck*, 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982) ("The court may prevent cross-examination into collateral matters of a personal nature having minor probative value.").

¶24 Additionally, as the state points out, the jury already had heard testimony suggesting L. may have had a motive to be untruthful. Abdi argued throughout trial that L. had, without justification, used force against him. Based on the nature of the proceeding, the jury was aware that the aggressor would face serious legal consequences, regardless of immigration status. Thus, even assuming defense counsel's question was based on more than mere speculation, the jury was already aware of a strong potential motivation for the victim to be untruthful, and the evidence would have been cumulative at best. It therefore was within the court's discretion implicitly to conclude that the relevance of testimony regarding the victim's immigration status was outweighed by its potential to confuse the jury. *See Cañez*, 202 Ariz. 133, ¶ 62, 42 P.3d at 584.

¶25 In light of the collateral, personal, and cumulative nature of the testimony, as well as its potential for confusion, the trial court reasonably could have determined that the jury had before it "sufficient information to assess the bias and motives of the witness[,]" without hearing testimony on the victim's immigration status. *State v. Bracy*, 145 Ariz. 520, 533, 703 P.2d 464, 477 (1985). It was within the court's discretion to place this limitation on cross-examination.

12

¶26        Abdi also alleges that excluding this evidence violated his "right to present a complete defense." Because Abdi raises this constitutional due process claim for the first time on appeal, we review for fundamental error only. *See State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005). Abdi therefore bears the burden of establishing that error occurred, that the error was fundamental, and that the error caused him prejudice. *Id*. ¶¶ 22-23.

¶27        The constitutional rights to due process and confrontation guarantee a criminal defendant "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), *quoting California v. Trombetta*, 467 U.S. 479, 485 (1984). This includes the right to cross-examine witnesses regarding their motive or bias. *See Davis v. Alaska*, 415 U.S. 308, 315-18 (1974). But these rights are not without limit, and states may establish rules that allow the exclusion of evidence where its "probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006). Moreover, "'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination.'" *Cañez*, 202 Ariz. 133, ¶ 62, 42 P.3d at 584, *quoting Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (alternation in *Cañez* omitted); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998). Because we conclude it was within the trial court's discretion to exclude the testimony, Abdi has not established error, much less fundamental, prejudicial error. *Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607.

13

**¶28**        Abdi next contends the trial court committed error when it precluded him "from testifying about being tortured as a child in Somalia." At trial, Abdi testified he had been born in Somalia and, at age thirteen, had moved with his family to a refugee camp in Kenya. Abdi described the hardships he had faced in Somalia as well as his experiences in the refugee camp. On redirect, counsel for Abdi stated, "I want to talk about what you were afraid of. Were you tortured in Somalia?" The state made a relevance objection, which was sustained by the court. Abdi now argues it was error to preclude the testimony because it was relevant to explain both the reason he had run away from the scene after stabbing L. and his initial denial of involvement in the incident when questioned by police.

**¶29**        We review the trial court's evidentiary ruling for an abuse of discretion.[5] *Amaya-Ruiz*, 166 Ariz. at 167, 800 P.2d at 1275. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of Arizona or by applicable statutes or rules." Ariz. R. Evid. 402. However, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . or needless presentation of cumulative evidence." Ariz. R. Evid. 403.

**¶30**        Throughout his testimony, Abdi referred to his fear of police in explaining his actions. Prior to the contested question, on direct examination, Abdi had testified that

---

[5]As the parties note, defense counsel attempted to make a record following the state's relevance objection, but the request to approach was denied. Under the circumstances, we hold this sufficient to preserve the relevancy issue for appeal.

the police in the refugee camp "were different than . . . American police officers." He went on to explain that "the police [in the refugee camp] [had been] corrupt" and that he "[had been] beaten by the police." Abdi also testified that in Kenya "[p]eople run away from the police[,] . . . [b]ecause of the fear they might beat . . . or even kill you." Based on this testimony, the trial court reasonably could have concluded that the proffered question would lead to needlessly cumulative evidence. We therefore conclude the court did not abuse its discretion in excluding the testimony. *See* Ariz. R. Evid. 403.

¶31 Finally, Abdi alleges that by disallowing the testimony about his torture, the trial court had "precluded [him] from testifying fully in his own defense," in violation of his constitutional rights. Abdi did not raise this argument below, and, again, we review only for fundamental error. *Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607.

¶32 Criminal defendants have the right to present a complete defense. *State v. Gilfillan*, 196 Ariz. 396, ¶ 19, 998 P.2d 1069, 1075 (App. 2000). Although the right to present a defense is a fundamental constitutional right, it is subject to evidentiary rules. *State v. Dickens*, 187 Ariz. 1, 14, 926 P.2d 468, 481 (1996); *see also United States v. Nobles*, 422 U.S. 225, 241 (1975) ("The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system . . . ."). Thus, the "right to present evidence in one's defense is limited to evidence which is relevant and not unduly prejudicial." *State v. Oliver*, 158 Ariz. 22, 30, 760 P.2d 1071, 1079 (1988). For the reasons discussed above, the court did not err fundamentally or

15

otherwise in disallowing this testimony. We therefore find no violation of Abdi's right to present a defense.

**Disposition**

¶33    Because we conclude the trial court committed reversible error in instructing the jury, we vacate Abdi's conviction and sentence and remand for further proceedings consistent with this decision.


/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge


CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge


/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Judge

16