IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

SEP 30 2011

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2010-0396 |
| Appellant/Cross-Appellee, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| KYLE EVAN SMITH, | ) | |
| | ) | |
| Appellee/Cross-Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20101369001

Honorable John S. Leonardo, Judge

AFFIRMED IN PART,
VACATED IN PART, AND REMANDED

_____

Barbara LaWall, Pima County Attorney
  By Jacob R. Lines                                                                    Tucson
                                                                    Attorneys for Appellant/
                                                                         Cross-Appellee

Isabel G. Garcia, Pima County Legal Defender
  By Stephan McCaffery                                                                 Tucson
                                                                    Attorneys for Appellee/
                                                                         Cross-Appellant

_____

E C K E R S T R O M, Presiding Judge.

¶1 Following a jury trial, Kyle Smith was convicted of two counts of aggravated driving under the influence of an intoxicant (DUI) arising from the same incident. The trial court suspended the imposition of sentence, placed Smith on concurrent, three-year terms of probation, and ordered that he be imprisoned for four months pursuant to A.R.S. § 28-1383(D)(1). On appeal, the state challenges the trial court's determination that Smith is eligible for probation. In his cross-appeal, Smith challenges the court's failure to strike a juror for cause and one of its instructions to the jury. For the reasons set forth below, we affirm in part and reverse in part.

## Factual and Procedural Background

¶2 The facts relevant to our disposition are purely procedural. *See State v. Garcia*, 220 Ariz. 49, ¶ 2, 202 P.3d 514, 515 (App. 2008). A grand jury alleged that on April 11, 2010, Smith committed aggravated DUI with a suspended, revoked, or restricted license, *see* A.R.S. §§ 28-1381(A)(1), 28-1383(A)(1), and aggravated driving with an alcohol concentration of .08 or more with a suspended, revoked, or restricted license. *See* §§ 28-1381(A)(2), 28-1383(A)(1).

¶3 During voir dire, a member of the venire panel, Juror T., indicated twice that he had experienced difficulty hearing the questions asked of the other prospective jurors. After T. asked the court to speak more loudly, he answered the questions posed to him without incident. When the court asked Smith whether he passed the panel, he raised no objection to T. or any other prospective juror. Juror T. subsequently was impaneled and participated in rendering the verdicts.

2

¶4        The trial court provided jury instructions without objection from Smith, and he was found guilty on both counts as noted above. For sentencing purposes, the state alleged, and the court found, that Smith had committed and been convicted of endangerment in 1999, a class six felony offense that was "not an historical prior felony" because it was neither a dangerous-nature offense nor had been committed in the five years preceding the instant convictions. Over the state's objection, the court found Smith was eligible for probation nonetheless, and it suspended the imposition of sentence. The state filed a timely notice of appeal from the court's disposition, *see* A.R.S. § 13-4032(5), and Smith filed a timely notice of cross-appeal from the judgment. *See* A.R.S. § 13-4033(A)(1); Ariz. R. Crim. P. 31.3(a).

**Juror Strike**

¶5        In his cross-appeal, Smith first contends the trial court committed fundamental error by refusing sua sponte to strike Juror T. for cause based on his apparent hearing problems. We need not address this issue, however, because Smith failed to use a peremptory strike to remove T. from the venire panel and thus waived any challenge to this juror pursuant to *State v. Rubio*, 219 Ariz. 177, 195 P.3d 214 (App. 2008).

¶6        As we explained in *Rubio*, Rule 18.4(b), Ariz. R. Crim. P., contemplates that an unqualified juror will be removed for cause either on a party's motion or on the court's own initiative. 219 Ariz. 177, ¶¶ 9, 12, 195 P.3d at 217, 218. If an error occurs in this process, a defendant must avail himself of the peremptory strikes provided by Rule 18.4(c) "to assure the selection of a qualified and unbiased jury." *Rubio*, 219 Ariz.

3

177, ¶¶ 9, 12, 195 P.3d at 217, 218. Failure to exercise a peremptory strike on an allegedly unqualified or biased juror waives any challenge to the juror on appeal. *Id.* ¶ 12.

**¶7** Smith reads *Rubio* narrowly, interpreting its waiver rule to apply only when there has been a denial of a motion to strike a juror for cause. Although *Rubio* involved such a scenario, *id.* ¶ 4, its holding is not so limited. We properly characterized the issue in that case as being "whether a defendant must either use an available peremptory strike to cure the trial court's alleged error or waive the right to raise that error on appeal." *Id.* ¶ 7. It makes no difference whether the alleged error is the court's denial of a motion to strike or its failure to remove a particular juror sua sponte as required by Rule 18.4(b). *Rubio* held that a defendant waives his previously voiced objection to a juror by failing to remove that juror with a peremptory strike. 219 Ariz. 177, ¶ 12, 195 P.3d at 218. It follows *a fortiori* that a defendant who both fails to object to a juror and fails to remove that juror with a peremptory strike waives any challenge to the juror on appeal.

**¶8** In any event, the record before us supports the trial court's implicit determination that the juror could hear and understand the proceedings. After he had been seated with the venire panel and had resolved his confusion about the prior questions asked of other venire members, T. responded appropriately to all the questions asked of him without need of repetition. Apart from a single request that the trial judge speak more loudly, Smith points to nothing in the record suggesting T. had problems hearing once he had been seated with the jury. Indeed, T.'s request to the court suggests that he would not hesitate to alert the court if he were unable to hear court proceedings.

4

Thus, even assuming arguendo that the *Rubio* waiver rule does not apply here, Smith has not demonstrated the trial court erred in deeming Juror T. to be capable and retaining him for jury service. *See State v. Diaz*, 223 Ariz. 358, ¶ 11, 224 P.3d 174, 176 (2010) ("Regardless of how an alleged error ultimately is characterized, . . . a defendant on appeal must first establish that some error occurred.").

## Jury Instruction

¶9        Smith next claims one of the jury instructions was erroneous because it "blended the question whether Smith was under the influence with the question whether he was impaired to the slightest degree," thereby "eliminat[ing] the possibility that Smith could have been under the influence while driving, but not impaired to the slightest degree."[1]   Reviewing the history of our DUI laws, Smith posits that "the only way to understand the amendment adding 'impaired to the slightest degree'" in what is now A.R.S. § 28-1381(A)(1) is that it added "an element that was not previously present."  "In order to interpret 'impaired to the slightest degree' in any meaningful way," he concludes, "it can only be that the phrase adds a requirement that 'under the influence'

---

[1]The instruction challenged on appeal stated as follows:

> "Under the influence of intoxicating liquor" means any influence which tends to deprive the defendant of ordinary clearness of intellect and self-control.  The term covers any influence of intoxicating liquor to the slightest degree, including well-known and easily recognized conditions as well as abnormal mental or physical conditions which may result from consuming liquor.  If the defendant's driving ability has been lessened in the slightest degree by the use of intoxicating liquors, then the defendant is deemed to be under the influence of intoxicating liquor.

does not already satisfy, either because it goes beyond what the supreme court held that phrase to mean or because it requires that the phrase 'under the influence' as having [sic] a new meaning." Smith does not specify further how being "under the influence" and being "impaired to the slightest degree" are different.

¶10　　　In the absence of an objection to a jury instruction, we review only for fundamental, prejudicial error. *State v. Eddington*, 226 Ariz. 72, ¶ 21, 244 P.3d 76, 83 (App. 2010), *review granted* (Ariz. Aug. 31, 2011). Novel assignments of error in this context seldom warrant relief, *id.* ¶ 22, particularly when the argument urged on appeal is primarily of academic interest. *See id.* ¶ 31. Such is the case here.

¶11　　　Assuming it is possible to be under the influence without also being impaired to the slightest degree, it follows from Smith's own reasoning that a defendant who is impaired to the slightest degree by alcohol is, at minimum, also under its influence. The court's instruction here informed the jury that it had to find Smith "impaired to the slightest degree" in order to find him guilty of aggravated DUI predicated upon a violation of § 28-1381(A)(1). Jurors are presumed to follow instructions. *State v. Newell*, 212 Ariz. 389, ¶ 69, 132 P.3d 833, 847 (2006). Any theoretical error in the challenged instruction, therefore, did not impact the verdict. And, to the extent Smith maintains the court's instruction "did not correctly state the law" because "the phrase 'under the influence' . . . ha[s] a new meaning," he has not articulated what that meaning is and how the instruction misstated it. We therefore find no basis to disturb the conviction. *See State v. Diaz*, 223 Ariz. 358, ¶ 11, 224 P.3d 174,

176 (2010) ("Regardless of how an alleged error ultimately is characterized, . . . a defendant on appeal must first establish that some error occurred.").

**Probation**

**¶12**　　　The state contends on appeal that the trial court erred in finding Smith eligible for probation. Although the court did not explain its reasoning for this conclusion on the record, the state contends it was based on an erroneous determination of how to count felony offenses for purposes of sentence enhancement. To address the issue raised, we must determine the meaning and correct application of certain statutes, which involves questions of law that we review de novo. *See State ex rel. Romley v. Hauser*, 209 Ariz. 539, ¶ 4, 105 P.3d 1158, 1159 (2005); *State v. Guillory*, 199 Ariz. 462, ¶ 3, 18 P.3d 1261, 1263 (App. 2001). If the language of a statute is plain, "we must give effect to that language and may not employ other means of statutory interpretation." *State v. Viramontes*, 204 Ariz. 360, ¶ 8, 64 P.3d 188, 189 (2003).

**¶13**　　　As it argued below, the state maintains Smith's sentence was governed by A.R.S. § 13-703(A).[2] That provision classifies as a "category one repetitive offender" any person who "is convicted of two felony offenses that were not committed on the same occasion but that either are consolidated for trial purposes or are not historical prior

---

[2]Although § 13-703 was amended most recently the month Smith committed the current offenses, *see* 2010 Ariz. Sess. Laws, ch. 194, §§ 2, 7, the amendment did not take effect until after the date of the offenses. *See* Ariz. Const. art. IV, pt. 1, § 1(3) (laws generally do not take effect until ninety days after close of legislative session). The prior version of § 13-703, therefore, is applicable to this case. *See* 2008 Ariz. Sess. Laws, ch. 301, § 28. Because the provisions we refer to are the same in relevant part, we cite to the current version of the statute, except as otherwise indicated.

felony convictions." *Id.* A category one offender is not eligible for probation. *See* § 13-703(O).

¶14 In the state's view, Smith "was 'convicted of two felony offenses that were not committed on the same occasion'" by being convicted of aggravated DUI in the present case and endangerment in 1999. § 13-703(A). These two offenses obviously were not committed on the same occasion. And, the state maintains, neither can they be considered "historical prior felony convictions," *id.*, because "[t]he aggravated DUI convictions . . . are the current convictions" and the endangerment conviction is too remote. *See* A.R.S. § 13-105(22)(c) (defining "[h]istorical prior felony conviction," in relevant part, to mean "[a]ny class 4, 5 or 6 felony . . . that was committed within the five years immediately preceding the date of the present offense").[3] Thus, the state concludes, Smith has two felony offenses under the narrowing criteria of § 13-703(A) and therefore qualifies as a repetitive offender under that provision.

¶15 We agree with the state's reading of the statute. That provision plainly articulates the two categories of felony convictions subject to inclusion and the number of such felonies that trigger the enhancements required thereby. As the state correctly observes, both Smith's remote, non-dangerous prior conviction and instant offense fall within the categories of offenses expressly included therein. *See Hauser*, 209 Ariz. 539,

_____

[3] 2008 Ariz. Sess. Laws, ch. 301, § 10.

8

¶¶ 1, 4, 6, 9, 105 P.3d at 1159, 1160 (finding similarly phrased predecessor statute to include remote, non-dangerous prior convictions).[4]

¶16    Here, an experienced trial judge rejected that construction of the statute without explaining his reasoning. And, we are mindful of our duty to construe criminal statutes "to promote justice and effect the objects of the law." A.R.S. § 13-104. We previously have recognized that the legislature has endeavored to create a "'carefully structured statutory scheme'" for criminal sentences. *State v. Alvarez*, 205 Ariz. 110, ¶ 11, 67 P.3d 706, 710 (App. 2003), *quoting State v. Germain*, 150 Ariz. 287, 290, 723 P.2d 105, 108 (App. 1986).

¶17    Generally, enhancement depends on the seriousness, age, and quantity of a defendant's prior offenses, *see Hauser*, 209 Ariz. 539, ¶¶ 8, 23, 105 P.3d at 1160, 1162-63, and, historically, the legislature does not count the current charge for enhancement purposes outside the context of multiple pending charges. *See State v. Thompson*, 200 Ariz. 439, ¶ 6, 27 P.3d 796, 798 (2001) (recognizing enhancement for "'prior felony conviction'" means "the conviction on the prior offense must precede the conviction on the present offense"); *see also* § 13-105(22)(c) (defining "'[h]istorical prior felony conviction'" as one committed before "present offense"). We do not overlook that the

---

[4]Smith suggests *Hauser* no longer is controlling because it addressed the predecessor statute to § 13-703(A) and the wording of the statute changed somewhat between the two versions. *Compare* § 13-703(A), *with* 1999 Ariz. Sess. Laws, ch. 261, § 10 (former A.R.S. § 13-702.02(A)). But the operative language upon which *Hauser* based its reasoning, the phrase "not historical prior felony convictions," has remained unaltered. And, Smith does not present a plausible alternate reading of that language to support his suggestion that the legislature did not intend thereby to refer to remote, non-dangerous prior felony convictions such as his 1999 conviction for endangerment.

effect of § 13-703(A)—which requires two felony convictions for enhancement but compels our courts to count the current offense as one of them—is to enhance Smith's current offense with itself. *See* § 13-703(A) (enhancement proper when defendant "is convicted" of two qualifying felonies). And because, by that formula, only one remote, non-dangerous prior felony conviction is necessary to render a defendant ineligible for probation when sentenced on any second felony offense, that statute deprives our trial judges of the discretion to impose a term of probation in any such case—regardless of how remote and mitigated the circumstances of the prior conviction, and regardless of how mitigated the circumstances of the instant offense.

¶18 Thus, one might speculate that, in crafting a statute logically designed to determine punishment for multiple contemporaneous convictions, the legislature overlooked the implications of its language for those defendants like Smith having only one remote, non-dangerous prior felony conviction. But, "'[w]e do not sit as a second legislature to rewrite laws that may strike us as improvident.'" *State v. Gonzalez*, 216 Ariz. 11, ¶ 9, 162 P.3d 650, 653 (App. 2007), *quoting In re Pima Cnty. Juv. Appeal No. 74802-2*, 164 Ariz. 25, 34, 790 P.2d 723, 732 (1990). "[A] statute's language is the most reliable index of its meaning." *State v. Sepahi*, 206 Ariz. 321, ¶ 16, 78 P.3d 732, 735 (2003). In the absence of any ambiguity or plausible contrary construction, we must apply the plain meaning of the pertinent language. *Viramontes*, 204 Ariz. 360, ¶ 8, 64 P.3d at 189. Here, Smith has offered no plausible alternate construction of § 13-703(A). We therefore conclude, as a matter of law, that Smith was ineligible for probation and the trial court erred in suspending his sentence.

10

**Disposition**

¶19       For the foregoing reasons, Smith's convictions are affirmed. However, for the reasons set forth above, we vacate the probationary term and remand this matter to the trial court for resentencing.

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge