IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee,*


*v.*


LUIS ARMANDO PERAZA,
*Appellant.*

No. 2 CA-CR 2015-0022
Filed January 28, 2016

---

Appeal from the Superior Court in Pima County
No. CR20140630001
The Honorable Scott Rash, Judge
The Honorable Teresa Godoy, Judge Pro Tempore

**AFFIRMED**

---

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Kathryn A. Damstra, Assistant Attorney General, Tucson
*Counsel for Appellee*

Steven R. Sonenberg, Pima County Public Defender
By Michael J. Miller and David J. Euchner,
Assistant Public Defenders, Tucson
*Co-Counsel for Appellant*

---

**OPINION**

Presiding Judge Howard authored the opinion of the Court, in which Judge Espinosa and Judge Staring concurred.

---

H O W A R D, Presiding Judge:

**¶1**      After a jury trial, Luis Peraza was convicted of aggravated driving under the influence (DUI) while his license was suspended or revoked and aggravated driving with an alcohol concentration (AC) of 0.08 or more while his license was suspended or revoked. On appeal, Peraza argues that the trial court erred both by denying his motion to suppress the results of a breathalyzer test because he was deprived of his right to counsel and by improperly instructing the jury. Because the trial court committed no reversible error, we affirm.

**Factual and Procedural Background**

**¶2**      "We view the facts in the light most favorable to sustaining the verdicts." *State v. Nottingham*, 231 Ariz. 21, ¶ 2, 289 P.3d 949, 951 (App. 2012). A Tucson Police Department (TPD) officer stopped Peraza after observing him use a private parking lot to avoid a traffic signal. After approaching Peraza, the officer observed signs that Peraza was under the influence of alcohol and saw an open container of alcohol underneath the driver's seat of the vehicle. Peraza admitted he had been drinking. He exhibited cues of impairment on field sobriety tests, and breathalyzer tests produced results of .153 and .152 AC.

**¶3**      The state charged Peraza and a jury found him guilty as noted above. The trial court sentenced him to presumptive, concurrent 4.5-year prison terms. We have jurisdiction over his appeal pursuant to A.R.S. §§ 12-120.21 and 13-4033(A)(1).

**Adequacy of Access to Counsel**

**¶4**       Peraza first argues the trial court erred by denying his motion to suppress the breathalyzer results, claiming the officer had deprived him of assistance of counsel by not providing adequate time for an attorney to return Peraza's call before the officer conducted the test. We review de novo the denial of a motion to suppress based on an alleged deprivation of counsel. *State v. Rumsey*, 225 Ariz. 374, ¶ 4, 238 P.3d 642, 644-45 (App. 2010). In reviewing the court's ruling, "we consider only the evidence presented at the suppression hearing and view the facts in the light most favorable to sustaining the . . . ruling." *State v. Gonzalez*, 235 Ariz. 212, ¶ 2, 330 P.3d 969, 970 (App. 2014).

**¶5**       The TPD officer stopped Peraza's car at 5:17 a.m., advised him of his *Miranda*[1] rights at 5:35 a.m., and, at 5:45 a.m., formally arrested him for DUI. At 6:31 a.m., while at the station, Peraza invoked his right to counsel. The officer provided Peraza with a phone book and told him he could have ten minutes to choose an attorney. Within ten minutes,[2] Peraza had twice attempted to reach the law firm he chose but was only able to leave messages for the attorney to call him back at the police station.

**¶6**       The officer waited until 6:52 a.m. for the attorney to return the calls, then at 6:56 a.m., conducted the first breathalyzer test. He conducted the second test at 7:02 a.m. The officer testified he had conducted the two AC tests before Peraza contacted an attorney because the statutory two-hour window for the collection of such evidence was expiring.

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]At oral argument, Peraza argued that this ten-minute window was arbitrary and insufficient under these facts. This theory differs markedly from the argument raised in his opening brief. Arguments raised for the first time at oral argument are untimely and therefore waived absent fundamental error. *State v. Murdaugh*, 209 Ariz. 19, ¶ 29, 97 P.3d 844, 851 (2004).

**¶7**        Section 28-1381(A)(2), A.R.S., establishes the statutory two-hour window by prohibiting a driver from operating a vehicle if that driver's AC is over 0.08 within two hours of driving.  If breath tests occur more than two hours after driving, the state is required to relate the results back to the relevant time for the results to be admissible.  *State v. Stanley*, 217 Ariz. 253, ¶ 24, 172 P.3d 848, 853 (App. 2007) ("If the sample is drawn after the two-hour mark, an expert must use retroactive extrapolation to determine the blood alcohol content.").

**¶8**        Despite the two-hour window, a defendant is entitled to the advice of counsel when in custody, "and the state may not unreasonably restrict that right."  *Kunzler v. Superior Court*, 154 Ariz. 568, 569, 744 P.2d 669, 670 (1987); *see* Ariz. R. Crim. P. 6.1(a). Accordingly, a defendant has the "right to speak to counsel before taking a breathalyzer test."  *State v. Sanders*, 194 Ariz. 156, ¶ 6, 978 P.2d 133, 134 (App. 1998).  That right, however, must give way when its exercise would "hinder an ongoing investigation."  *Kunzler*, 154 Ariz. at 569, 744 P.2d at 670.  This arises most frequently in DUI cases because of their "unique evidentiary circumstances." *Montano v. Superior Court*, 149 Ariz. 385, 389, 719 P.2d 271, 275 (1986).

**¶9**        "It is the state's burden to demonstrate that allowing the suspect to consult with counsel when requested would have disrupted the police investigation."  *Rumsey*, 225 Ariz. 374, ¶ 8, 238 P.3d at 645.  But the "defendant has no right to delay [an investigation] by demanding to consult with counsel . . . .  If the lawyer cannot be reached by telephone . . . the state may continue with its detention procedures."  *McNutt v. Superior Court*, 133 Ariz. 7, 10 n.2, 648 P.2d 122, 125 n.2 (1982).

**¶10**        Courts have found a deprivation of counsel when police either flatly prevented a defendant from speaking to an attorney or in some active way impeded access to counsel.  *See State v. Juarez*, 161 Ariz. 76, 77-79, 81, 775 P.2d 1140, 1141-43, 1145 (1989) (police did not allow defendants to contact attorneys and read implied consent at end of twenty-minute waiting period); *see also Kunzler*, 154 Ariz. at 570, 744 P.2d at 671 (remanding for reasonableness determination where police prevented defendant from speaking to attorney during one-hour breathalyzer warm-up period); *McNutt*, 133 Ariz. at 9-10,

648 P.2d at 124-25 (police prevented defendant from having attorney arrange independent blood test when attorney available by telephone); *State v. Penney*, 229 Ariz. 32, ¶ 13, 270 P.3d 859, 862-63 (App. 2012) (police unreasonably deprived defendant of access to phone book); *Rumsey*, 225 Ariz. 374, ¶¶ 9-10, 238 P.3d at 645-46 (police prevented defendant from consulting with attorney present at station); *State v. Rosengren*, 199 Ariz. 112, ¶¶ 3-4, 10, 14 P.3d 303, 306-07 (App. 2000) (police prevented defendant from calling father, an out-of-state attorney); *State v. Keyonnie*, 181 Ariz. 485, 485-86, 892 P.2d 205, 205-06 (App. 1995) (police did not provide defendant any opportunity to contact attorney).

¶11 As noted above, this court concluded there had been a deprivation of counsel in *Rumsey*, although on grounds different than those cited by the trial court. 225 Ariz. 374, ¶ 10, 238 P.3d at 646. Following a motor vehicle accident, responding police officers noticed that Rumsey appeared to be intoxicated and arrested her. *Id.* ¶¶ 2-3. While still at the scene of the accident, Rumsey spoke with her attorney by telephone for approximately six minutes. *Id.* ¶ 5. The officers waited twenty minutes for the attorney to arrive before taking Rumsey to the substation. *Id.* The attorney arrived at the accident scene fifteen minutes later and agreed to follow an officer to the substation. *Id.* But the attorney made a wrong turn and arrived at the station roughly fifty-two minutes after Rumsey. *Id.* By that time, Rumsey had already consented to a blood draw, and an officer had obtained a warrant for three more blood draws. *Id.* ¶¶ 5-6.

¶12 This court concluded the trial court had erred in determining Rumsey was deprived of counsel based on an officer's statement that she could "'talk to [counsel] after the first blood draw.'" *Id.* ¶ 7 (alteration in original). We noted that officers "had honored [the defendant's] request to speak with counsel at the accident scene" and that it had been proper to proceed with the investigation at the substation because the attorney did not follow the officers and none "of the officers at the substation knew where [the attorney] had gone [or] when . . . he would arrive." *Id.* ¶ 9. We instead determined officers had improperly deprived Rumsey of counsel later, once the attorney had arrived at the substation and

had made contact with the police but was nevertheless prevented from speaking with the defendant before the blood draw. *Id.* ¶¶ 10-11.

**¶13**    In this case, however, Peraza's right to counsel was honored.  The officer notified Peraza of his right to counsel, permitted him to call an attorney, and gave Peraza adequate time to contact one before continuing his investigation.  The officer could not know when or if an attorney would call back.  He then conducted two breathalyzer tests at approximately twenty-five minutes and fourteen minutes before the end of the statutory two-hour window.  *See* A.R.S. § 28-1381(A)(2).

**¶14**    The officer reasonably delayed the tests while still avoiding the risk that they would occur after the two-hour window. Had any delays occurred, such as those due to a suspect burping or vomiting, the test results could have been inadmissible without extrapolation evidence.  *Stanley*, 217 Ariz. 253, ¶ 24, 172 P.3d at 853 ("To avoid additional evidentiary hurdles, the police typically need to have the blood sample drawn within two hours of the arrest."). Causing the tests to occur outside the two-hour window would have delayed or hindered the investigation.  *McNutt*, 133 Ariz. at 10 n.2, 648 P.2d at 125 n.2.  We conclude the officer did not interfere with Peraza's access to counsel.

**¶15**    Peraza contends, however, that the law firm he called might have opened at about the time the officer conducted the test. But Peraza had no right to hinder the investigation.  *See id.*  And no evidence supports the speculation that the law firm Peraza had chosen was open at the time of the test and no phone call was received during the test or thereafter when the officer was still present.  In this instance, the state met its burden to show that the police investigation would have been impeded by a further delay to allow Peraza to speak to an attorney.  *See Rumsey*, 225 Ariz. 374, ¶ 8, 238 P.3d at 645.

**Refusal of Testing Instruction**

**¶16**    Next, Peraza argues the trial court erred by instructing the jury on the refusal to submit to a sobriety test because no

evidence supported it. We review the decision to give a jury instruction for an abuse of discretion. *State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995).

¶17        As a preliminary matter, the state argues Peraza failed to object below and has forfeited any review except fundamental, prejudicial error. *See State v. Smith*, 228 Ariz. 126, ¶ 10, 263 P.3d 675, 678 (App. 2011). When discussing this instruction, defense counsel stated "I don't really think we're dealing with this because it wasn't a refusal. He did perform the field sobriety tests. So I don't think it's really necessary. I think it could be deleted." The prosecutor responded "I would just prefer it stay in. It's an accurate representation of what the law is and the procedure that was followed in this case." The trial court gave the instruction.

¶18        Although Peraza's counsel failed to use the word "object," the specific word is not required to make an objection or to preserve an issue for appeal. *See State v. Rutledge*, 205 Ariz. 7, ¶ 30, 66 P.3d 50, 56 (2003) ("'The purpose of an objection is to permit the trial court to rectify possible error, and to enable the opposition to obviate the objection if possible.'"), *quoting State v. Hoffman*, 78 Ariz. 319, 325, 279 P.2d 898, 901 (1955). Here, Peraza's counsel explained why the instruction should not be given, and the state was given an opportunity to respond. Thus, Peraza effectively objected to the instruction below, and we will review the merits of his claim accordingly. *See State v. Henderson*, 210 Ariz. 561, ¶ 39, 115 P.3d 601, 611 (2005) (where defendant objected below, burden is on state to prove harmless error).

¶19        "A party is entitled to an instruction on any theory reasonably supported by the evidence." *Bolton*, 182 Ariz. at 309, 896 P.2d at 849. However, "it is improper to give an instruction which is not clearly supported by the evidence." *State v. Smith*, 113 Ariz. 298, 300, 552 P.2d 1192, 1194 (1976).

¶20        The jury instruction in question read:

Refusal to Perform Field Sobriety Tests

A person who operates a motor vehicle within this state gives consent to a test or tests of his blood, breath, urine, or other bodily substance for the purpose of determining alcohol concentration or drug content if arrested for any offense arising out of acts alleged to have been committed by a person who was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor or drugs.

A failure to expressly agree to the test or successfully complete the test is deemed a refusal.

Although this instruction's title refers to "field sobriety tests," the instruction itself discusses blood, breath, and urine tests.

¶21      The undisputed evidence showed that Peraza successfully submitted to two breathalyzer tests. The state presented no evidence that he had refused the testing, and on the contrary, the officer testified that Peraza had consented to the breathalyzer. Thus, because no evidence supported the instruction, the trial court erred by giving it. *See Smith*, 113 Ariz. at 300, 552 P.2d at 1194.

¶22      When the trial court gives incorrect instructions, we apply a harmless error analysis. *State v. Rodriguez*, 192 Ariz. 58, ¶ 27, 961 P.2d 1006, 1011 (1998). "If the state can show beyond a reasonable doubt that the error did not affect the verdict, the error is harmless." *Nottingham*, 231 Ariz. 21, ¶ 17, 289 P.3d at 956.

¶23      The jury here was instructed that, after determining the facts, it might find "that some instructions no longer apply." And we presume the jury follows its instructions. *See State v. Newell*, 212 Ariz. 389, ¶ 68, 132 P.3d 833, 847 (2006). The jury heard uncontested testimony that Peraza consented to and subsequently completed the tests. Neither attorney argued in closing that Peraza had refused the tests. Finally, the instruction did not describe any consequences for

refusing the test. A reasonable jury would have disregarded the instruction.

¶24 Moreover, the instruction was not significantly related to an element of the offense and was unnecessary to convict Peraza. The state was required to prove that Peraza had an AC above .08 within two hours of driving a vehicle while his license was suspended or revoked. *See* § 28-1381(A)(2). At trial, the evidence demonstrated that Peraza was pulled over while driving a vehicle at 5:17 a.m. Within two hours, his AC levels were .153 and .152. Even had the trial court not given the complained-of instruction, a rational jury would have found Peraza guilty beyond a reasonable doubt under the facts of this case. Thus, because the jury would have found Peraza guilty, regardless of the instruction, the error was harmless. *See Nottingham*, 231 Ariz. 21, ¶ 17, 289 P.3d at 956.

## Breath-Testing Device Instruction

¶25 Finally, Peraza argues the trial court erred when it instructed the jury that records of periodic maintenance were prima facie evidence that the breathalyzer was working properly. Because Peraza failed to object to the instruction at trial, he has forfeited review for all but fundamental, prejudicial error. *See Smith*, 228 Ariz. 126, ¶ 10, 263 P.3d at 678; *Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d at 607. To prevail on a fundamental error claim, Peraza must "prove error" and that the error was both fundamental and prejudicial. *Henderson*, 210 Ariz. 561, ¶¶ 20, 23, 26, 115 P.3d at 607-08. We review the decision to give a jury instruction for an abuse of discretion, but we review constitutional issues and whether the jurors were properly instructed de novo. *State v. Dann*, 220 Ariz. 351, ¶¶ 27, 51, 207 P.3d 604, 613, 616-17 (2009).

¶26 Peraza first argues the statute on which the jury instruction was based dealt with admissibility, not evidentiary presumptions. The instruction stated:

> The State has introduced evidence of periodic maintenance through records which show that the quantitative breath testing device was in proper operating

condition at a time before and after the test.
Such records are prima facie evidence that
the device was in the proper condition at
the time of the test.

This jury instruction is based on A.R.S. § 28-1323(A) which provides that the results of a breathalyzer test are admissible as evidence upon establishing five requirements. The fifth requirement, which is the source of the at-issue jury instruction, allows the results of a breathalyzer test to be admitted so long as the "device . . . was in proper operating condition." § 28-1323(A)(5). The statute further provides that "[r]ecords of periodic maintenance that show that the device was in proper operating condition are admissible in any proceeding as prima facie evidence that the device was in proper operating condition." *Id.*

¶27 This court has already ruled that this instruction correctly states the law. *State v. O'Haire*, 149 Ariz. 518, 521, 720 P.2d 119, 122 (App. 1986). Although § 28-1323(A)(5) does pertain to admissibility, prima facie evidence of a fact is a higher standard than required for admissibility. *See* Ariz. R. Evid. 402 (relevant evidence admissible). Based on the statute's plain language, it allows admission of the evidence as prima facie evidence the equipment was functioning properly.

¶28 Peraza next contends the instruction created an evidentiary presumption for the jury, burdening the defense with proving the instrument was not working properly, which amounted to unconstitutional burden-shifting. "To determine the constitutionality of any given presumption, we must first determine whether the presumption is permissive or mandatory." *State v. Platt*, 130 Ariz. 570, 574, 637 P.2d 1073, 1077 (1981). Mandatory presumptions represent an impermissible burden shift when "they relieve the State of the burden of persuasion on an element of an offense." *Francis v. Franklin*, 471 U.S. 307, 314 (1985). "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts." *Id.*

¶29 In contrast, "[a] permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate

facts, but does not require the jury to draw that conclusion." *Id.* The permissive inference "allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." *Cty. Court of Ulster Cty. v. Allen*, 442 U.S. 140, 157 (1979). In such cases "the basic fact may constitute prima facie evidence of the elemental fact." *Id.* These permissive inferences do not rise to the level of unconstitutional burden shifting because they "leave[] the trier of fact free to credit or reject" them. *Id.* "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Francis*, 471 U.S. at 314-15.

¶30 *Turner v. United States* is instructive as an example. 396 U.S. 398 (1970). There, the jury was instructed "'the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found.'" *Id.* at 402 n.2, *quoting* 26 U.S.C. § 4704(a). The Court concluded the jury "was not required by the instructions to find [the defendant] guilty" but instead allowed to make an inference that "did not require the defendant to present evidence." *Id.* at 406. The court determined the statutory presumption was constitutional. *Id.* at 417-18. And although the court in *Turner* did not use the phrase "permissive presumption," the court in *Ulster* cited to *Turner* as an example of a constitutional permissive inference. *Ulster*, 442 U.S. at 157.

¶31 Peraza relies on *Norton v. Superior Court*, to support his claim that the instruction in this case is unconstitutional. 171 Ariz. 155, 829 P.2d 345 (App. 1992). In that case, this court considered former A.R.S. § 12-2458(B), which provided: "Proof of the failure by such parent to furnish reasonable support for his or her child is prima facie evidence that such failure to furnish reasonable support is wilful and without lawful excuse." *Id.* at 157, 829 P.2d at 347. The state conceded that the statute was unconstitutional. *Id.* at 158. Based on that concession, we concluded that section created an unconstitutional mandatory presumption because, upon proof of a certain fact, it forced the jury to presume that a defendant "possesse[d] the requisite intent for the offense." *Id.* at 157-58.

**¶32** Here, the state has argued the statute is constitutional and the issue is properly presented for decision. We agree the instruction in this case is permissive under *Ulster* and *Turner* and distinguishable from *Norton*. The presumption that records of periodic breathalyzer maintenance are in fact evidence that the breathalyzer was working properly did not relieve the state of the burden of persuasion on any element of the offense. *See Francis*, 471 U.S. at 314; *see also* § 28-1381(A)(2). The instruction only informed the jury that they should construe evidence of successful ongoing maintenance as prima facie evidence that the machine was working properly. Such an "evidentiary presumption . . . does not detract from the ultimate question of whether" the results actually were accurate. *State v. Laughter*, 128 Ariz. 264, 267 n.3, 625 P.2d 327, 330 n.3 (App. 1980). The instruction invited the jury to infer the existence of one kind of evidence from another kind of evidence. *See Ulster*, 442 U.S. at 157; *cf. Norton*, 171 Ariz. at 157-58, 829 P.2d at 347-48. The jury was instructed further that the state bore the burden of proof of every element of the offense beyond a reasonable doubt and the defendant was not required to produce any evidence.

**¶33** We also note that other state courts have found statutory presumptions permissive where they only establish prima facie evidence and therefore do not shift the burden of proof or otherwise violate the constitution. *See, e.g.*, *People v. Goldsmith*, 326 P.3d 239, 245, 247 (Ca. 2014) (statute establishing prima facie admissibility on certain evidentiary showing constituted only permissive presumption and did not shift burden of proof); *State v. Rolle*, 560 So. 2d 1154, 1154, 1157 (Fla. 1990) (In DUI AC context, court "interpreted the language 'shall be prima facie evidence' . . . as creating a[ permissive] inference."); *State v. Kriss*, 654 P.2d 942, 946 (Kan. 1982) ("'A prima facie evidence provision is nothing more or less than a rule of evidence which governs the sufficiency of the evidence to take the case to the jury.'"), *quoting State v. Haremza*, 515 P.2d 1217, 1222 (Kan. 1973); *State v. Lindsey*, 491 So. 2d 371, 375 (La. 1986) ("terms such as . . . 'prima facie evidence' in criminal cases have been interpreted to create only permissive inferences"); *Brown*

*v. State*, 910 A.2d 571, 584 (Md. Ct. Spec. App. 2006)[3] (statutory inference that AC created prima facie evidence of impairment only permissive inference); *People v. Galindo*, 17 N.E.3d 1121, 1123-24 (N.Y. 2014) (statutory inference establishing prima facie evidence of unlawful intent created only permissive inference); *Commonwealth v. Murray*, 749 A.2d 513, ¶¶ 4, 23-25 (Pa. Super. Ct. 2000) (statutory inference that AC created prima facie evidence of impairment only permissive inference); *State v. Raddeman*, 618 N.W.2d 258, ¶¶ 6, 10 (Wis. Ct. App. 2000) (statutory inference that AC created prima facie evidence of impairment only permissive inference).

**¶34**　　　The instruction at issue did not require the jury to reach any specific conclusions, and they were expressly charged that it is the purview of the jurors to "determine the importance to be given to the evidence."[4] Even after the state had presented evidence of periodic maintenance, the jury was still free, as defense counsel suggested at trial, to find that the state had not met its burden in proving that the machine was properly functioning. In sum, the instruction did not "shift[] the burden of persuasion to defendant on [a] crucial element" of the offense. *Norton*, 171 Ariz. at 158, 829 P.2d at 348.

---

[3]At oral argument, Peraza noted that the court in *Brown* cited *Briscoe v. State*, 479 A.2d 1385 (Md. Ct. Spec. App. 1984) as an example of an unconstitutional instruction even when the underlying statutory presumption is constitutional. The *Briscoe* court found the instruction-based presumption violated defendant's rights not because the presumption itself was improper, but because the blood draw in that case was conducted by a medical professional as part of a medical procedure, and Maryland state law only provided a statutory presumption for law enforcement initiated blood draws, not medically initiated ones. *Id.* at 1386-87, 1386 n.1. Thus, the instruction was unconstitutional because it created a presumption which was not supported by statute in the case, thereby violating the defendant's rights. *Id.* at 1387.

[4]Although we find the instruction here was not erroneous, adding language specifically addressing the effect of the presumption would avoid any potential burden-shifting issues.

¶35      Thus, the evidentiary presumption was permissive and constitutional so long as "there [was] a rational connection between the predicate and the presumed facts." *Platt*, 130 Ariz. at 574, 637 P.2d at 1077. And, a rational jury could infer from records of periodic maintenance that the breathalyzer was operating properly, particularly without further evidence to the contrary. Therefore, this instruction did not violate Peraza's due process rights and consequently was not error.

¶36      Peraza additionally argues that the instruction was erroneous because it "required the jury to find that the breath analyzer was operating properly when the state introduced the evidence, preventing independent evaluation of argument that it was not." This requirement would, according to Peraza, violate the Arizona Constitution, which prohibits judges from "commenting on the evidence." *State v. Roque*, 213 Ariz. 193, ¶ 66, 141 P.3d 368, 388 (2006); *see also* Ariz. Const. art. VI, § 27. Article VI, section 27 does indeed prevent judges from interfering with an independent evaluation of the evidence, *Roque*, 213 Ariz. 193, ¶ 66, 141 P.3d at 388, but also exhorts judges to "declare the law," Ariz. Const. art. VI, § 27. The subject instruction does not fall under article VI, section 27's prohibition, however, because it is a correct instruction on the law and not a judicial comment. *See Roque*, 213 Ariz. 193, ¶¶ 67-68, 141 P.3d at 388 (concluding judicial comment that testimony stricken for "not being reliable" not judicial interference); *see also O'Haire*, 149 Ariz. at 521, 720 P.2d at 122 (no error in giving questioned instruction "taken almost verbatim" from § 28-1323(A)(5)).

¶37      Further, even assuming arguendo that giving the instruction was fundamental error, Peraza would fail to establish any actual prejudice. *See State v. Joyner*, 215 Ariz. 134, ¶ 31, 158 P.3d 263, 273 (App. 2007). Peraza bears the burden to show he was prejudiced by the instruction, and because "[f]undamental error review involves a fact-intensive inquiry . . . the showing required to establish prejudice . . . differs from case to case." *Henderson*, 210 Ariz. 561, ¶ 26, 115 P.3d at 608. Prejudice results only when, "but for the error, a reasonable fact-finder 'could have reached a different result.'" *Joyner*, 215 Ariz. 134, ¶ 31, 158 P.3d at 273, *quoting Henderson*, 210 Ariz. 561, ¶ 27, 115 P.3d at 609.

¶38      Even had the jury instruction not been given, a reasonable jury would still have found Peraza guilty on both counts. The officer testified Peraza exhibited four of eight cues of impairment during the field sobriety tests and admitted he had been drinking. The state presented two breathalyzer test results which showed Peraza was above the statutory AC limit. The state also presented evidence that the officer had conducted proper pre-test procedures to ensure accuracy, as well as evidence of successful calibration, and expert testimony that the machine was working properly at the time of Peraza's AC test. No evidence indicated that the breathalyzer results were inaccurate or that the machine was malfunctioning. Instead Peraza only cross-examined the officer and the state's expert, and speculated in closing arguments[5] the machine could have been malfunctioning. Thus, in light of all the evidence, no reasonable jury could have found that the breathalyzer was malfunctioning, and Peraza has failed to show he was prejudiced by the instruction. *See Joyner*, 215 Ariz. 134, ¶ 31, 158 P.3d at 273.

## Disposition

¶39      For the foregoing reasons, we affirm Peraza's convictions and sentences.

---

[5]We note that closing arguments of the attorneys are not evidence. *See State v. Gonzales*, 105 Ariz. 434, 437, 466 P.2d 388, 391 (1970).