NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CHRISTOPHER LEE MARINAKIS, *Appellant*.

No. 1 CA-CR 22-0386

FILED 01-09-2024

Appeal from the Superior Court in Maricopa County
No. CR2018-108548-001
The Honorable Frank W. Moskowitz, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Brian Coffman
*Counsel for Appellee*

Gallagher & Kennedy PA, Phoenix
By Woodrow Thompson, Hannah H. Porter, Joshua I. Fisher
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Maria Elena Cruz joined.

_____

**C A T L E T T**, Judge:

¶1          Christopher Marinakis ("Marinakis") appeals his convictions for manslaughter and endangerment. Marinakis argues the superior court incorrectly rejected his motion to dismiss both charges or suppress evidence because the State of Arizona (the "State") violated his right to counsel. Marinakis also argues the superior court made evidentiary errors during his trial, including improperly admitting evidence about Marinakis' drug test results and about his prior DUI conviction. Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2          While driving a truck with a trailer attached, Marinakis veered into oncoming traffic and collided with two vehicles. An occupant in one of the vehicles died from his injuries.

¶3          When officers arrived on scene, they observed extensive damage to the vehicles and found Marinakis out of his truck and talking on his cell phone. The officers attempted to speak with Marinakis but found him difficult to understand because he was speaking very fast when responding to questions. He was also "fidgety" and had bloodshot, watery eyes. An officer described Marinakis' actions as different from typical post-traumatic event anxiety because his pupils were constricted, his fingers were twitching uncontrollably, and, overall, he displayed manic behavior.

¶4          An officer asked Marinakis if he had taken any drugs, and Marinakis admitted to smoking medical marijuana the night before. Still suspicious, the officer asked if Marinakis had taken any pain medication or methamphetamines because his pupils were constricted. Marinakis said "no" at first, but then admitted he had "in the past" after experiencing some personal troubles. The officer asked follow-up questions about that drug use, but then Marinakis asked for an attorney. The officer placed Marinakis under arrest.

¶5          The officer testified that it was standard procedure to take an individual arrested for DUI, who asks for an attorney, to a drug recognition

expert ("DRE") room at the police station. The DRE room has separate cells with a phone, giving arrestees an opportunity to contact an attorney outside of police presence.

¶6         Because the officer who questioned Marinakis was a motorcycle officer, a different officer began transporting Marinakis to the DRE room. While in transit, Marinakis requested to go to the hospital due to pain in his head, collar bone, and shoulder area. The officer honored Marinakis' request and re-routed to the hospital.

¶7         At the hospital, Marinakis became volatile and agitated. He complained about his medical treatment and was "flailing around" on the gurney. He was uncooperative and yelled at hospital staff. The hospital staff requested someone be continually present with Marinakis because they felt unsafe. There were concerns about leaving Marinakis alone and giving him anything that could be used as a weapon.

¶8         Officers testified that, because Marinakis could not be left alone, he was not able to have a private call with an attorney. But the interviewing officer also testified that, had Marinakis not made the hospital staff feel unsafe, he would have been left alone to make a call. Because of Marinakis' behavior, however, an officer or security guard always remained with Marinakis. At one point, hospital staff proposed putting Marinakis in a four-point restraint but, ultimately, officers kept him handcuffed to a gurney.

¶9         After obtaining a warrant, an officer read Marinakis his *Miranda* rights and obtained a blood sample. Marinakis was then released from the hospital and officers transported him to jail.

¶10        Officers remained at the scene of the accident for several hours gathering evidence. Among other evidence, in the subwoofer of Marinakis' truck, they found a glass smoking pipe with white residue. The State charged Marinakis with manslaughter and endangerment.

¶11        Marinakis filed a motion to dismiss or suppress evidence, arguing the State violated his right to counsel. After a suppression hearing, the court found that Marinakis requested an attorney while in custody but his actions "put himself in a situation where the officers could not allow him to make a phone call alone in a safe and secure manner while at the hospital" and that the officers did not "interfere with or impede" his right to counsel. The court further found that Marinakis had an opportunity to call an attorney at the police station but did not do so.

¶12            After a first trial resulted in a hung jury, the State tried Marinakis a second time.  The State filed a motion to admit evidence of Marinakis' prior 2011 DUI conviction to demonstrate recklessness. Marinakis objected, arguing that the DUI was not sufficiently similar and the potential prejudice outweighed any probative value.   The court admitted the evidence, but instructed the jury that it should only consider the prior act to determine whether Marinakis acted recklessly.

¶13            When the trial began, the clerk, with the jury present, read the list of charges against Marinakis from the "grand jurors of Maricopa County, Arizona."  The court later gave a jury instruction that the charges were not evidence against Marinakis.

¶14            The State offered expert testimony from a forensic scientist about the amount of methamphetamines and amphetamines found in Marinakis' blood after the accident.   The expert explained there is an "uncertainty budget," when testing for substances, that accounts for different variants and provides a range to ensure the amounts are accurately represented.  The expert testified methamphetamine has a 60% uncertainty budget and amphetamine has a 44.4% uncertainty budget, meaning that if a blood sample was re-tested, it would produce results within the uncertainty range of the original test 95% of the time.  The expert relayed that Marinakis' blood test showed 311.90 nanograms per milliliter of methamphetamine, with an uncertainty range of 124.76–499.04 nanograms, and 48 nanograms per milliliter for amphetamines with an uncertainty range of 27.71–71.25 nanograms.

¶15            The expert also testified there is a therapeutic range, which is a quantity a doctor could prescribe to "have a positive effect on that person."   According to the State's expert, the therapeutic range for methamphetamines is between 10–50 nanograms per milliliter.   The therapeutic range for amphetamines is between 30–110 nanograms per milliliter.  The expert explained that methamphetamines do not have "a specific level that we can point to and say everyone is impaired at," but, while factoring in tolerance, "typically more . . . of an impairing substance will cause more impairment."

¶16            Prior to the testimony, Marinakis argued the expert could not provide proper foundation to demonstrate impairment.  After hearing the expert's testimony outside the presence of the jury, the court agreed the expert would not be permitted to testify that Marinakis was impaired.  The court concluded, however, that the data could support both Marinakis' and the State's arguments and thus allowed the jury to evaluate the evidence.

¶17        The jury found Marinakis guilty of manslaughter and endangerment.  Marinakis timely appealed.  We have jurisdiction.  *See* A.R.S. § 12-120.21(A)(1).

## DISCUSSION

### I.        Right to Counsel

¶18        Marinakis argues the superior court erred in denying his motion to dismiss or suppress evidence because the State violated his right to counsel.  We review these issues for an abuse of discretion, but we review legal issues and constitutional claims *de novo.  State v. Peraza*, 239 Ariz. 140, 144 ¶ 4 (App. 2016); *State v. Rosengren*, 199 Ariz. 112, 115–16 ¶ 9 (App. 2000).  We consider only the evidence presented at the suppression hearing and view the facts in the light most favorable to upholding the superior court's decision.  *Peraza*, 239 Ariz. at 144 ¶ 4.

¶19        The right to counsel "includes the right to consult *privately with counsel . . . as soon as feasible* after a defendant has been taken into custody[.]"  Ariz. R. Crim. P. 6.1(a) (emphasis added).  Once a suspect invokes the right described in Rule 6.1, and the situation is such that would allow the suspect to consult privately with counsel, the state must permit "access between a defendant and his lawyer . . . when such access would not unduly delay the [DUI] investigation and arrest."  *State v. Holland*, 147 Ariz. 453, 455 (1985).

¶20        Marinakis maintains the State violated his right to counsel before he was in police custody.  If not in custody, an individual may exercise his right to counsel "when and where he wishes."  *Kunzler v. Pima Cnty. Sup. Ct.*, 154 Ariz. 568, 569 (1987).  Marinakis was given that right— Marinakis had access to his cell phone after the accident and before any police officer began speaking to him.  Tellingly, Marinakis was speaking on his cell phone when officers arrived on scene.  Marinakis did not establish that the officers prevented him from contacting counsel before placing him in custody.

¶21        Between the point when police arrested Marinakis and when he was later booked into jail, police were not able to allow him to consult privately with counsel.  The superior court found that Marinakis was in custody when he first asked for an attorney.  Marinakis argues he should have been allowed to contact an attorney at that point; instead, police placed Marinakis in a vehicle and began transporting him to the police station.  The transporting officer testified it was standard procedure to take DUI arrestees directly to the DRE room to contact an attorney, and it was

his intention to do so with Marinakis. But the circumstances of this arrest dictated otherwise when Marinakis requested to go to a hospital because of pain. After considering the relevant evidence, the superior court found "the officer's conduct did not interfere with or impede [Marinakis'] right to counsel." The evidence sufficiently supports that conclusion. *See Gutierrez v. Guterrez*, 193 Ariz. 343, 347 ¶ 13 (App. 1998).

**¶22** Marinakis next contends the State should have allowed him to consult with counsel while at the hospital. The superior court found that Marinakis created an unsafe situation at the hospital, and his own actions necessitated the delay he now complains about. The evidentiary record from the suppression hearing adequately supports that conclusion. Once Marinakis requested professional medical attention, the officers were justified in transporting him to a hospital, rather than to the DRE room, and prioritizing his medical treatment. Within about twenty minutes of arriving at the hospital, however, Marinakis became erratic and irrational. Based on that behavior, the officers reasonably concluded Marinakis could not be left alone to make a call. This need for constant supervision prevented Marinakis from having a private conversation with an attorney. *See Holland*, 147 Ariz. at 455.

**¶23** Marinakis asks us to disregard privacy concerns and hold that the officers should have allowed him to contact an attorney even if officers or others might have overheard the conversation. But Rule 6.1(a) protects "the right to consult *privately* with counsel." *See id.* at 455 ("[I]t is universally accepted that effective representation is not possible without the right of a defendant to confer *in private* with his counsel." (emphasis added)). Marinakis could not consult privately with counsel while in the back of a police vehicle and within earshot of an officer. And he could not consult privately with counsel while being supervised in the hospital for safety purposes. We conclude the State did not violate Marinakis' right to counsel by waiting for a time when he could contact an attorney without others listening in. *See id.* ("Both Arizona caselaw and the Rules of Criminal Procedure state that the right to counsel includes the right to consult in private with an attorney."); *see also id.* at 456 (dismissing DUI charges when police violated the defendant's "right to consult privately with counsel"). That time did not come until Marinakis arrived at the police station for booking. Prior to that time, the State did not "withhold counsel," and thus the State was not required to establish that "access would not unduly delay the [DUI] investigation and arrest." *Holland*, 147 Ariz. at 455.

**¶24** Marinakis lastly argues he should have been allowed to speak with counsel at some point after he arrived for booking. The superior court

found that Marinakis was "given the opportunity to use the phone alone at the police station and he declined to do so." The record sufficiently supports that finding. The transporting officer testified that, while he did not personally provide Marinakis with a telephone, there were phones available on the wall at the booking facility and individuals held there "have an opportunity to call anyone." During cross-examination, the officer confirmed that, upon arrival at the facility, Marinakis "could have" made a private call to an attorney. Given our deferential standard when reviewing the superior court's factual determinations, we affirm the superior court's factual finding that Marinakis had an opportunity to use a phone to contact counsel but did not do so. *See Peraza*, 239 Ariz. at 144 ¶ 4.

**¶25** The superior court did not err in denying Marinakis' request to dismiss the charges against him or suppress evidence based on the right to counsel.

## II. Expert Testimony

**¶26** Marinakis next argues the court abused its discretion by admitting expert testimony about the quantity of drugs found in his blood when the results could not establish impairment. We review the admissibility of expert testimony for an abuse of discretion. *State v. Boyston*, 231 Ariz. 539, 544 ¶ 14 (2013).

**¶27** A witness is qualified to testify as an expert if their "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Ariz. R. Evid. 702(a); *see also State ex rel. Montgomery v. Miller*, 234 Ariz. 289, 298 ¶ 21 (App. 2014). Marinakis relies on *State v. Teran*, 253 Ariz. 165 (App. 2022), to argue that the testimony was improper because the expert was not able to connect any drug quantity to impairment.

**¶28** In *Teran*, the superior court determined an expert was unqualified to testify about impairment but still admitted testimony about the quantity of drugs in the defendant's blood and the expected signs or symptoms of impairment based on that quantity. 253 Ariz. at 175 ¶¶ 45–46. This court determined the superior court erred by allowing that testimony because the expert "was unqualified as an expert on impairment and should not have been permitted to testify on that topic." *Id.* ¶ 46.

**¶29** *Teran* is distinguishable. Unlike the testimony there, the State's expert here did not testify that Marinakis was impaired. Instead, the expert provided details about the amount of methamphetamines and amphetamines in Marinakis' system, the uncertainty budget of the drug

test, as well as the therapeutic range for the drugs present. While the expert testified that "typically more . . . of an impairing substance will cause more impairment," she qualified that statement by stating there is no "specific level that we can point to and say everyone is impaired at[.]" These details provided proper context about what the jury could make of the quantities of drugs found in Marinakis' system, without opining whether Marinakis was impaired.

**¶30** The superior court also correctly recognized that the drug quantity evidence could support Marinakis' defense theory, and therefore admitted the evidence to allow the jury to assess its weight. *See State v. Bernstein*, 237 Ariz. 226, 230 ¶ 18 (2015) (explaining that the superior court should "allow the jury to exercise its fact-finding function, for it is the jury's exclusive province to assess the weight and credibility of evidence"). And Marinakis had the opportunity to cross-examine the expert to emphasize those portions of the evidence advantageous to him and undercut those portions disadvantageous to him. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). The court did not abuse its discretion.

### III.    Prior DUI Conviction

**¶31** Marinakis argues the court erred by admitting his prior DUI conviction into evidence because it was not sufficiently like the crime in this case. We review the superior court's decision on the admissibility of evidence for an abuse of discretion. *State v. Forde*, 233 Ariz. 543, 559 ¶ 42 (2014). We affirm if there is "any reasonable evidence in the record to sustain it." *State v. Butler*, 230 Ariz. 465, 472 ¶ 28 (App. 2012).

**¶32** Rule 404(b) allows evidence of prior acts if used for the purpose of proving knowledge. Ariz. R. Evid. 404(b)(2). Evidence of a previous crime is only admissible if it is "similar to the act for which the defendant is on trial." *State v. Woody*, 173 Ariz. 561, 563 (App. 1992).

**¶33** The State used Marinakis' prior DUI conviction to demonstrate recklessness. Marinakis argues the facts of the prior and current act were not sufficiently similar because alcohol and methamphetamine/amphetamine are different substances with different side effects—one is a "downer," the others are "uppers." We disagree that the difference in side effects is material to the Rule 404(b) analysis. Evidence of a "prior act need not be factually identical to the crime at issue"

and the reason for admitting the act is to allow a jury to infer a defendant "had knowledge of its consequences." *Id.*; *see also State v. Salamanca*, 233 Ariz. 292, 296 ¶ 20 (App. 2013) ("It demonstrated his knowledge of the risks of . . . driving [intoxicated], and therefore bore on whether he committed . . . manslaughter by recklessly causing the death of another.").

¶34 Marinakis' argument takes an overly narrow view of the comparable facts. A difference in side effects with the same result (impairment) does not establish an abuse of discretion. Rather, the jury could conclude that the prior DUI conviction shows Marinakis was aware of the risk of driving while *impaired*, regardless of whether the impairment stems from a stimulant or a depressant. *See State v. Woodall*, 155 Ariz. 1, 5 (App. 1987).

¶35 Marinakis further argues that admitting the prior DUI conviction violated Rule 403, which allows the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" Ariz. R. Evid. 403. Marinakis argues prejudice because the State lacked additional evidence to demonstrate knowledge and the prior conviction might have convinced the jury that Marinakis was a "bad person." Marinakis' "bad person" argument can often be made against 404(b) evidence. "But not all harmful evidence is unfairly prejudicial" because "evidence which is relevant and material will generally be adverse to the opponent." *State v. Schurz*, 176 Ariz. 46, 52 (1993). Marinakis does not highlight any prejudicial fact from the prior conviction other than it occurred and it could show knowledge. This is insufficient to show an abuse of discretion. The superior court did not err in admitting the prior conviction, particularly when the court instructed the jury that it should consider the prior conviction only when deciding recklessness.

## IV. Grand Juror Language

¶36 Finally, Marinakis argues the court should not have referenced the "grand jurors of Maricopa County, Arizona" when reading the list of charges at the beginning of the trial. Marinakis concedes his argument is foreclosed by *State v. Cornell*, 179 Ariz. 314, 320 (1994), which held that instructing the jury that the indictment "was not evidence against the accused" eliminated any prejudice. *Id.*; *see also* Ariz. R. Crim P. 19.1(b)(1) ("[T]he court reads the indictment, information, or complaint to the jury[.]"). The court gave that instruction here. Based on *Cornell*, Marinakis' argument fails.

**CONCLUSION**

¶37        We affirm Marinakis' convictions.



AMY M. WOOD • Clerk of the Court
FILED:    TM