NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JORDAN RIEPE, *Appellant.*

No. 1 CA-CR 19-0555
FILED 9-8-2020

Appeal from the Superior Court in Coconino County
No. S0300CR201700891
The Honorable Mark R. Moran, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michelle L. Hogan
*Counsel for Appellee*

Coconino County Public Defender's Office, Flagstaff
By Brad Bransky
*Counsel for Appellant*

————————————————

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge D. Steven Williams and Chief Judge Peter B. Swann[1] joined.

————————————————

**B R O W N**, Judge:

**¶1**        Jordan Riepe appeals his convictions and sentences for two counts of sexual assault.  For the following reasons, we affirm.

## BACKGROUND

**¶2**        The State tried Riepe on three counts of sexually assaulting his 16-year-old stepsister.[2]  The victim testified Riepe put his fingers, an object, and his penis in her vagina without her consent after they had been drinking alcohol at Riepe's girlfriend's apartment.  That same night, the victim told family members, medical personnel, and law enforcement that Riepe raped her.  The State indicted Riepe on three counts of sexual assault.  At the conclusion of a four-day trial, the jury found Riepe not guilty of the charge involving an object but found him guilty of the other two sexual assault charges.

**¶3**        The superior court sentenced Riepe to consecutive mitigated terms of 5.25 years' imprisonment for each conviction.  This timely appeal followed.

## DISCUSSION

### A.        Use of Facility Dog

**¶4**        Before trial, the State filed a "motion for use of a facility dog in court proceedings."  *See* A.R.S. § 13-4442.  The State asserted that the victim, now 18 years old, would have less "anxiety and stress" while

———————————

[1]        Chief Judge Peter B. Swann replaces the Honorable Kenton D. Jones, who was originally assigned to this panel.  Chief Judge Swann has read the briefs and reviewed the record.

[2]        Though not technically stepsiblings, the victim testified that she and Riepe considered themselves such because Riepe's mother and the victim's father had been a couple for a long time.

participating in the case if a service dog were allowed to accompany her. Riepe did not respond to the State's motion, and the superior court granted it, stating it would consider restrictions on the dog's use before jury selection. At a pretrial conference, the State asked that the dog be allowed in the courtroom during Riepe's trial and placed at the victim's feet while she testified. Riepe did not oppose the request, provided the dog was not "paraded in front of the jury." The court ruled the victim could testify with the dog beside her but the dog should not be visible to the jury during her testimony or while it was brought to and from the witness stand.

¶5 On the second day of trial, before the jury was empaneled, Riepe complained that on the previous day, "because of the way the seating was done, the [prospective] jurors had to walk past the victim and her family and the dog, and one almost tripped on the dog and [on] a number of occasions the jurors saw [the victim] petting the dog while they were sitting [in the court] during jury selection." Riepe stated he was not asking for a mistrial but believed it was "outside of the spirit of the court's ruling" to allow the victim to "pet the dog in front of the jury." Noting its previous ruling did not address the dog's use when the victim was in the gallery, the superior court ruled the dog could not be "paraded back and forth in front of the jury" or "used in a manner in which the victim is actively interacting with the dog while the jury is present."

¶6 After the State rested its case, Riepe asserted the dog had been walking around while witnesses testified, distracting jurors, and it should be removed from the courtroom if it could not be less obtrusive. The superior court "dispute[d]" Riepe's account of the dog's behavior, stating it closely observed the dog during the proceedings, the dog was not walking around, and the jurors' attention was focused on the evidence. The court denied Riepe's motion.

¶7 On appeal, Riepe argues the statute permitting facility dogs to be used by victims at trial violates due process. He contends the practice sends a message to jurors that a defendant has caused trauma to the victim, which erodes the presumption of innocence and encourages jurors to consider extrinsic evidence.

¶8 Because Riepe did not challenge the constitutionality of the facility dog's use before the superior court, we review only for fundamental error. *See State v. Williams*, 220 Ariz. 331, 334, ¶ 8 (App. 2008). Under that standard, Riepe has the burden to show the claimed error (1) goes to the foundation of his case, (2) takes away a right essential to his defense, or (3) is of such magnitude that it denied him a fair trial. *State v. Escalante*, 245

Ariz. 135, 138, ¶ 1 (2018). If the error falls under either of the first two prongs, Riepe must establish prejudice; if it falls under the third prong, prejudice is presumed. *Id.*

¶9 Under Arizona law, the superior court may allow an adult victim to be accompanied by a facility dog while the victim testifies, provided the party seeking to use the dog "file[s] a notice with the court that includes the certification of the facility dog, the name of the person or entity who certified the dog and evidence that the facility dog is insured."[3] A.R.S. § 13-4442(A), (B); *see also* Ariz. R. Crim. P. 39(b)(9) (protecting an eligible victim's "right to the assistance of a facility dog when testifying as provided in A.R.S. § 13-4442"). If a facility dog is used, "the court shall instruct the jury on the role of the facility dog and that the facility dog is a trained animal" to ensure the dog's presence "does not influence the jury or is not a reflection on the truthfulness of any testimony that is offered by the victim." A.R.S. § 13-4442(C).

¶10 We evaluate whether a particular practice inherently diminishes the presumption of innocence in the mind of jurors by considering "reason, principle, and common human experience." *Estelle v. Williams*, 425 U.S. 501, 504 (1976). Those considerations cut against Riepe's constitutional claim. Support animals have become commonplace in our society. To the extent use of a facility dog poses a risk of prejudicing the defendant, the superior court has discretion to place conditions on the dog's use and is obligated to instruct jurors not to consider the dog's presence for an improper purpose.[4] Unlike compelling a defendant to attend trial in prison clothes or shackles, the limited use of a support animal does not present "a continuing influence throughout the trial" that creates "an unacceptable risk . . . of impermissible factors coming into play." *Id.* at 504–

---

[3] The victim in this case was over 18 years old at the time of trial. The superior court must allow a victim under 18 to use a facility dog while testifying but has discretion whether to allow a victim over 18 to do so. A.R.S. § 13-4442(A), (B).

[4] The standard facility dog instruction reads as follows: "A witness may be accompanied by a dog while testifying in court. The dog's presence is not and should not be a reflection on the truthfulness or credibility of any testimony that is offered by the witness. The dog is trained to assist witnesses in court proceedings. The presence of the dog should not influence your deliberations in any way." Rev. Ariz. Jury Instr. Stand. Crim. 27 (facility dog) (5th ed. 2019).

05; *see also Holbrook v. Flynn*, 475 U.S. 560, 569 (1986) (contrasting a defendant's conspicuous shackling or prison attire with the courtroom placement of armed guards, to whose presence "[o]ur society has become inured . . . in most public places"). Riepe has failed to show § 13-4442 "involves such a probability that prejudice will result that it is deemed inherently lacking in due process." *Estes v. Texas*, 381 U.S. 532, 542–43 (1965).

¶11        Moreover, the superior court had discretion to allow the facility dog to accompany the victim at trial under *State v. Millis*, 242 Ariz. 33 (App. 2017). In that case, we rejected the defendant's argument that allowing a facility dog to accompany a victim sitting in the gallery at trial is "presumptively prejudicial" to the defendant in every case. *Id.* at 41–42, ¶¶ 28, 32. Following the use of the dog at pretrial hearings, the defendant filed a motion in limine to preclude the dog's presence at trial and argued repeatedly he would be prejudiced. *Id.* at 41, ¶ 28. We determined that use of the dog was not prejudicial, partly because "there is no indication that this policy contaminates a fair trial in every case." *Id.* at 42, ¶ 32. Further, the dog accompanied the victim while she sat in the gallery, not while testifying. *Id.* at 41, 43, ¶¶ 28, 33. And in any case, we reasoned that "[a]lthough § 13-4442 was not in effect at the time of Millis's trial, it shows the policy of the State of Arizona to accommodate crime victims' use of a dog." *Id.* at 42, ¶ 32. We see no reason to depart from this analysis and therefore conclude Riepe has not established that the practice of allowing a facility dog to accompany a victim violates due process.

¶12        Riepe also argues the superior court erred by allowing the dog to be used at his trial because (1) the dog lacked valid proof of insurance and certification, (2) the court failed to instruct the jury on the dog's role, and (3) the court should have excluded the dog from the courtroom in response to Riepe's objections to its use and behavior.

¶13        When the State moved to use the facility dog in this case, it submitted a letter describing insurance coverage for the dog and a certificate showing the dog had completed training with a licensed organization. *See* A.R.S. § 13-4442(A). Riepe argues the proof of insurance was not current and the dog's certificate was expired at the time of trial.[5]

---

[5]        The State filed the motion for use of a facility dog seven months before Riepe's trial. The proof of insurance was dated approximately one year before trial and stated that it covered two service dogs, which were not further identified. A certificate showed the dog used in this case had

We review the superior court's interpretation and application of § 13-4442 de novo. *State v. Smith*, 228 Ariz. 126, 129, ¶ 12 (App. 2011). Because Riepe did not object to the State's proof until now, he must establish fundamental, prejudicial error to merit relief. *See Escalante*, 245 Ariz. at 138, ¶ 1.

**¶14** Riepe has not satisfied his burden. The superior court reasonably accepted the State's proof of insurance for the dog in this case, and Riepe offers no support or explanation for his argument to the contrary. Nor does he substantiate his claim the dog's certification had lapsed. The dog's training certificate showed it was duly certified to provide assistance by an organization currently licensed to provide that certification. That the organization's license might have been expired when the State filed its motion to use the dog or at the time of trial has no bearing on whether the dog was certified in accordance with § 13-4442.

**¶15** Despite being required to do so under § 13-4442(C), the superior court did not instruct jurors on use of the facility dog. After receiving the court's proposed instructions—which apparently did not include the facility dog instruction envisioned by § 13-4442(C)—Riepe did not request that instruction or otherwise point out the omission. A defendant's failure to object to an omitted instruction at trial limits our review of the omission on appeal to fundamental error only. *See State v. Gallegos*, 178 Ariz. 1, 11 (1994).

**¶16** Even though the victim's credibility was a critical issue at Riepe's trial, her use of the dog was not vital to jurors' assessment of credibility. The record reveals no indication jurors saw the victim with the dog after the first day of jury selection. By instructing jurors both before and after the close of evidence that Riepe was presumed innocent and they should determine the facts solely on the basis of the testimony and admitted exhibits without being influenced by sympathy, the superior court mitigated the likelihood jurors would inappropriately consider the dog's presence in evaluating the victim's testimony. *See State v. White*, 160 Ariz. 24, 31–32 (1989) (omission of presumption of innocence instruction was not fundamental error where the court otherwise gave correct instructions placing the burden of proof on the State). Although the court should have instructed the jury on the limited purpose of the facility dog, Riepe has not shown the error went to the foundation of his case or took away a right

---

completed training with a licensed organization 14 months before Riepe's trial. The organization's license was current when the dog completed training, but it was set to expire, if not renewed, three months after that training.

essential to his defense; nor has he established prejudice. *See Escalante*, 245 Ariz. at 138, ¶ 1.

**¶17**      Riepe also argues the superior court erred by not excluding the dog in response to his objections during trial. We review the court's rulings on use of the dog during the trial for an abuse of discretion. *Millis*, 242 Ariz. at 41, ¶ 27. Because Riepe only asked to exclude the dog after his second objection, we review his first objection for fundamental error only. *See Escalante*, 245 Ariz. at 138, ¶ 1.

**¶18**      The superior court's rulings on Riepe's objections to the facility dog were within its discretion. When Riepe objected to the victim petting the dog in the presence of prospective jurors, the court ruled she could no longer interact with the dog. Excluding the dog at that point was unnecessary because jurors never saw the dog with the victim after the court's ruling. When Riepe later asserted the dog was distracting jurors, the court disputed that observation. Barring the dog's presence after Riepe's second objection was unnecessary because the court found the dog was not a distraction and Riepe offers no evidence to counter that finding.

## B.      Exclusion of Evidence on Cross-Examination

**¶19**      Riepe argues the superior court violated his constitutional right to confront an adverse witness by sustaining objections to his cross-examination of the victim. We review rulings involving the Confrontation Clause de novo. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006).

**¶20**      Opportunity for cross-examination is the principal right secured by the Confrontation Clause. *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974). That right is not limitless, however. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (citation omitted).

**¶21**      In reviewing the reasonableness of restrictions on cross-examination, we consider "whether the defendant has been denied the opportunity of presenting to the trier of fact information which bears either on the issues in the case or on the credibility of the witness." *State v. Riggs*, 189 Ariz. 327, 331 (1997) (citation omitted).

¶22        A nurse who examined the victim shortly after the assault noticed some abrasions and redness on the victim's neck.  The victim did not know how she received the marks.  She did not remember Riepe touching her neck, nor could she recall having the marks before the assault or receiving them after it.  Swabs taken from the area revealed a mixture of DNA that excluded Riepe, assuming the mixture was limited to two contributors.  On cross-examination, Riepe asked the victim if she told people the marks on her neck were not there before Riepe assaulted her.  After she answered yes, Riepe asked if she had "any explanation why some other man's DNA was on the marks on [her] neck."  The State objected and the superior court sustained the objection as speculative, reasoning the victim had previously testified "she did not know how the marks got there."

¶23        Riepe argues the superior court's ruling deprived him of his right to confront the victim because she might have remembered someone else caused the marks, which would have weakened the State's case against Riepe.  The record shows no error.  Because there was no evidence the unidentified DNA on the victim's neck came from a man, Riepe's question to the victim mischaracterized the evidence and was both speculative and argumentative.  *See State v. Perez*, 141 Ariz. 459, 464 (1984) (appellate court "obliged to affirm the trial court's ruling if the result was legally correct for any reason").

¶24        Riepe also argues the superior court erred by sustaining objections to questions he asked the victim about her body position when Riepe assaulted her.  The relevant exchange went as follows:

> Q Did you tell anybody -- did you testify today that you tried to stop him when he was pulling your pants down?
>
> A No.
>
> Q But in this version you were awake when he did that?
>
> A Yes, I was awake when he did that.
>
> Q Then you said that you rolled over onto your stomach; correct?
>
> A He got on top of me and then I rolled over on my stomach.
>
> Q Well, if you're on your side, how can he get on top of you and put his penis into you?

A  I don't know.  I wasn't watching.

Q  You were on your side?

A  Yes, I was on my side.

Q  You rolled over onto your stomach?

A  No.  He got on top of me and then I rolled over on my stomach.

. . . .

Q  He got on top of you while you are lying on your stomach; is that what you said?

A  I said I was lying on my side and then he got on top of me.

Q  You're saying he got on top of you while you were laying on your side; correct?

A  No.

Q  Well, you said you didn't --

A  For him to be on top of me, I would have been on my back.

Q  Well, then -- so now you're saying he was on top of you when you were lying on your back?

[PROSECUTOR]:  Objection, misstates the evidence.

THE COURT:  Also asked and answered.  So let's move on. Sustained.

[DEFENSE COUNSEL:]  When did you roll over onto your stomach?

A  I do not remember.

[PROSECUTOR]:  Objection, asked and answered.

THE COURT:  Sustained.

[DEFENSE COUNSEL]:  Judge, it wasn't answered.

THE COURT: Yes, it has been. Sustained.

¶25      The superior court did not abuse its discretion because it reasonably concluded Riepe's questions were repetitive. *See, e.g.*, *State v. Bible*, 175 Ariz. 549, 595 (1993) (trial judge has discretion to limit "repetitive, irrelevant, or argumentative questioning"); Ariz. R. Evid. 611(a) (court should "exercise reasonable control" over examination of witnesses to encourage "determining the truth," to "avoid wasting time," and to "protect witnesses from harassment or undue embarrassment"). Riepe was able to make his point to the jury without need for further emphasis.

### C.      Exclusion of Evidence on Direct Examination

¶26      When Riepe questioned the victim on direct examination during the defense's presentation of evidence, he sought to imply she falsely accused him to get attention. To that end, Riepe asked the victim whether she had 1500 Facebook friends at the time of the assault. The superior court sustained the State's objection on the ground of relevance.

¶27      Riepe argues the court's ruling violated the Fourteenth Amendment's guarantee that he receive "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). We review the ruling for an abuse of discretion, giving deference to the court's determination of relevance. *State v. Chappell*, 225 Ariz. 229, 238, ¶ 28 (2010).

¶28      Considering there was no evidence that the victim posted about the assault on Facebook, the superior court reasonably concluded that the mere number of Facebook friends the victim had was not probative of whether she fabricated a claim of rape to get attention. *See, e.g.*, *State v. Maloney*, 101 Ariz. 111, 115 (1966) (court did not abuse its discretion by precluding testimony about a remote incident whose relevance depended on an "extremely tenuous" inference). The court's ruling was within its "considerable discretion." *State v. Smith*, 136 Ariz. 273, 276 (1983).

**CONCLUSION**

¶29 We affirm Riepe's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA